54 F.3d 777
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Shannon Gayle Barton RUSSO, Joseph Roland Russo, Plaintiffs-Appellants,
v.
CITY OF WARREN, a Michigan municipal corporation, Dennis
Burrick, individually and in his representative capacity as
Deputy Fire Marshall for the City of Warren Fire Department,
John Uritescu, individually and in his representative
capacity as a detective for the City of Warren Police
Department, Mark Fontaine, individually and in his
representative capacity as a detective for the City of
Warren Police Department, Robert Lehman, individually and in
his representative capacity as a detective for the City of
Warren Police Department, jointly and severally, Defendants-Appellees.
 No. 94-1002.
 United States Court of Appeals, Sixth Circuit.
 May 9, 1995.
 
 Before: KEITH, MARTIN, and GUY, Circuit Judges.
 PER CURIAM.
 
 
 1
 On July 2, 1993, the district court granted summary judgment to the defendants in this Section 1983 case and dismissed with prejudice all of plaintiffs' claims. Arguing that summary judgment was inappropriate, plaintiffs Shannon Russo and Joseph Russo appeal the court's denial of their motion for reconsideration of its summary judgment order. For the reasons set forth below, we AFFIRM in part and REVERSE in part the district court's decision granting summary judgment to the defendants on all claims.
 
 
 2
 The tragedy from which this case arose occurred on October 13, 1990. On that date Shannon Barton Russo[1] was babysitting Matthew Russo and Joey Russo, ages 2 and 4 respectively, when she noticed the lights dimming in the house and smoke in various rooms. Joey was with her, but she was unable to locate Matthew. Despite Russo's efforts to find Matthew, and those of a neighbor and another person, he was not found until the firefighters arrived and extricated him. Matthew was taken to a hospital where he subsequently died of smoke inhalation.
 
 
 3
 As the fire was being suppressed, Deputy Fire Marshall Dennis Burrick and Warren Police Department detectives John Uritescu and Robert Lehman arrived and began investigating the cause of the fire. Burrick also called arson investigation expert Donald Worden of the Michigan State Police Fire Marshall Division to assist. During his investigation, Burrick noticed a V-pattern on the floor of the family room, indicative of the use of an incendiary device. Warren Police Department detective Mark Fontaine prepared an affidavit in support of a search warrant containing Burrick's finding and opinion about the cause of the fire. The Warren Police Department conducted a search of the Russo residence and collected physical evidence for analysis. Burrick and Worden issued separate reports, each concluding that the cause of the fire was not natural, mechanical or electrical and that there were signs of the use of a liquid accelerant. Lab tests, however, failed to identify the presence of any accelerant. At the request of the police, Shannon Russo took and passed a polygraph examination. Burrick, Uritescu and Lehman interviewed several firefighters, witnesses and suspects, and found certain inconsistencies in their statements. Based on the totality of this information, Burrick and Uritescu submitted a request for an arrest warrant and turned over their files to Macomb County Prosecutor, Gerald Warner. Warner authorized a warrant for the arrest of Shannon Russo on a charge of felony murder. A magistrate approved the warrant.
 
 
 4
 On April 16, 1991, a preliminary examination was held before the Michigan 37th District Court. The hearing took all day and involved the taking of evidence from six witnesses as well as Burrick and Worden. Counsel for Russo cross-examined each witness. The state district court determined that probable cause existed to believe that a crime had been committed and that Russo committed it. Russo was then bound over for trial.
 
 
 5
 Russo filed a Motion to Quash Information in the Macomb County Circuit Court, arguing that there had been insufficient evidence of probable cause to believe that a felony murder had been committed and that Russo had committed it. The state circuit court denied the motion to quash. The circuit court noted the circumstantial nature of the evidence, and recognized that other theories as to the cause of the fire could be supported by the evidence, but the circuit court did not believe that the state district court had abused its discretion in determining that probable cause existed. Russo chose not to appeal the denial of her Motion to Quash to the Michigan Court of Appeals.
 
 
 6
 After presentation of the evidence at trial, the circuit court granted Russo's motion for directed verdict. The court believed that the weak circumstantial evidence, and the lack of evidence as to motive (an element of the crime of arson in Michigan) was such that no reasonable juror could find that Russo was the person who set the fire.
 
 
 7
 Subsequent to the criminal trial, Shannon Russo and her husband Joseph Russo filed a Section 1983 action against the defendants. The case was filed in state court but was removed to federal court pursuant to 28 U.S.C. Sec. 1441. The Russo's nine-count complaint included claims of false arrest and false imprisonment, malicious prosecution, intentional infliction of emotional distress, invasion of privacy/false light, gross negligence, conspiracy to violate Shannon Russo's rights, a claim that the municipality failed to adequately train and supervise individual defendants, and derivative claims of Mr. Russo. The City of Warren and the individual defendants filed motions for summary judgment. On June 24, 1993, after hearing, the federal district court granted the defendants' motions and dismissed all the Russos' claims, including all their state law claims. The district court believed that each of the Russos' claims was premised upon the absence of probable cause, and that they were estopped from relitigating the probable cause issue under Michigan's doctrine of collateral estoppel. The Russos then filed a motion for reconsideration, which was denied on December 3, 1993. This timely appeal followed.
 
 
 8
 On appeal, the Russos argue that the state district court's decision that probable cause existed was "vacated" by the state circuit court's subsequent directed verdict acquitting Shannon Russo. Thus, they argue that the state district court's decision cannot be given preclusive effect in their Section 1983 case on the issue of probable cause. They also argue that, even if probable cause existed, Michigan requires strict mutuality for issue preclusion and therefore they are not precluded from relitigating the issue. Finally, the Russos argue that even if the probable cause determination has preclusive effect, the district court improperly granted summary judgment as to three of their state law claims--the intentional infliction of emotional distress, invasion of privacy/false light, and gross negligence claims--because the absence of probable cause is not an element in these torts.
 
 
 9
 We review a district court's decision to grant summary judgment de novo. Loschiavo v. City of Dearborn, 33 F.3d 548, 550 (6th Cir. 1994). Summary judgment is proper only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Further, we view all evidence in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).
 
 I. Whether Probable Cause Existed
 
 10
 The Russos argue that the directed verdict for Shannon Russo "vacated" the probable cause determination by the state district court. The directed verdict by the circuit court did not "vacate" the state district court's probable cause determination. A directed verdict may be appropriate if, after considering the evidence in the light most favorable to the nonmoving party, the trial court determines that reasonable minds would not differ as to facts. Rice v. ISI Manufacturing, Inc., 525 N.W.2d 533, 535 (Mich. 1995). A probable cause determination is subject to a different legal standard, namely, whether it is more likely than not that a crime has been committed. If Shannon Russo wanted to overturn the probable cause determination, she should have pursued an appeal to the Michigan court of appeals. Thus, neither logically nor procedurally does a directed verdict "vacate" a probable cause determination.
 
 II. Collateral Estoppel
 
 11
 In Section 1983 cases, the defensive use of collateral estoppel may preclude the relitigation of issues already determined in a criminal context if: 1) the issue was fully and fairly litigated and, 2) if the law of collateral estoppel in the state in which the issue was originally litigated would allow preclusive effect in state court. Allen v. McCurry, 449 U.S. 90 (1980); see also Haring v. Prosise, 462 U.S. 306, 312-317 (1983) (discussing the application of collateral estoppel in Section 1983 actions; district court to determine whether the issue would be precluded under state collateral estoppel law). Here, the issue of probable cause was fully and fairly litigated in the state district court. The probable cause hearing took an entire day and Russo cross-examined each of the several witnesses. The Russos contend, however, that Shannon Russo's "strategic decision" to move ahead to trial in order to obtain an acquittal, rather than attempting to obtain a discretionary appeal in state court, requires a finding that the probable cause issue was not fully and fairly litigated. We disagree. Her decision not to appeal was not the type of "strategic decision" resulting in something less than a full and fair opportunity to litigate the issue of probable cause. Coogan v. City of Wixom, 820 F.2d 170, 175 (6th Cir. 1987). In Coogan, we said that considerations which "counsel against engaging in [a full adversary hearing] at the early stages of a criminal proceeding" are the type of strategic decisions which might negate any preclusive effect regarding that issue. Her decision not to appeal, however, did not prevent her from engaging in a full adversarial hearing on this issue.
 
 
 12
 The federal district court then determined that Michigan's doctrine of collateral estoppel would operate to preclude relitigation of the probable cause issue in the criminal to civil context. The Russos argue that the district court erred because Michigan requires mutuality for application of the doctrine. The district court examined Michigan collateral estoppel law and found that, while the Michigan supreme court had not directly addressed the issue of whether mutuality is required for the defensive use of collateral estoppel in the criminal to civil context, Michigan court of appeals decisions led to the conclusion that Michigan would relax its mutuality requirement if faced with this question. We agree with the district court's well-reasoned opinion on this point, and find both Lichon v. American Universal Insurance Co., 459 N.W.2d 288 (Mich. 1990), and Knoblauch v. Kenyon, 415 N.W.2d 286 (Mich. App. 1987), particularly instructive. In Lichon, the Michigan Supreme Court reaffirmed the rule requiring mutuality of parties for issue preclusion, but cited Knoblauch as a case where the lack of mutuality did not preclude the application of collateral estoppel. Lichon, 459 N.W.2d at 297-98. In Knoblauch, the Michigan court of appeals relaxed the mutuality requirement and allowed the defensive use of collateral estoppel in a criminal to civil context. There, the court barred a civil malpractice action based on collateral estoppel because of a determination in the criminal case that the defendant received effective assistance of counsel.
 
 
 13
 As the United States Supreme Court stated in Baker v. McCollan, "[t]he Constitution does not guarantee that only the guilty will be arrested. If it did, Sec. 1983 would provide a cause of action for every defendant acquitted--indeed for every suspect released." 443 U.S. 137, 145 (1979). The fact that Shannon Russo received a directed verdict in her favor after trial does not mean that probable cause did not exist to prosecute her. Further, the district court did not err in determining that, based on Michigan appellate decisions, Michigan's highest court would relax the mutuality requirement in the criminal to civil context where the issue of probable cause was fully and fairly litigated in the criminal case. Because the absence of probable cause is an element of the Russos' prima facie case for each of their federal claims, as well as for three of their state law claims--malicious prosecution, false arrest and false imprisonment--the distict court did not err in granting summary judgment for the defendants as to these claims. However, because the absence of probable cause is not an element in the Russos' other three state law tort claims--intentional infliction of emotional distress, invasion of privacy/false light and gross negligence--the district court improperly granted summary judgment and dismissed these claims. Therefore, we AFFIRM that part of the district court's order granting summary judgment to the defendants on the federal claims and the state claims of malicious prosecution, false arrest and false imprisonment and REVERSE as to the remaining state claims. We order the district court to remand the Russos' intentional infliction of emotional distress, invasion of privacy and gross negligence claims to state court for disposition.
 
 
 
 [1]
 At the time of the fire, Shannon Barton Russo was known as Shannon Barton, having married Joseph Roland Russo after the fire