**David GREENE and Starna Hill,**
**Plaintiffs–Appellees,**

v.

**William B. REEVES, a/k/a Brad Reeves (95–5586); Robert G. Stephens (95–5644); Thomas J. Smith, III (95–5643), Defendants–Appellants.**

Nos. 95–5586, 95–5643 and 95–5644.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 6, 1996.

Decided April 8, 1996.

1102

Michael L. Parsons (briefed), Gracey, Ruth, Howard, Tate & Sowell, Nashville, TN, Joe F. Childers (argued), Lexington, KY, for David A. Greene and Starna Hill.

Marianna Jackson Clay, Asst. U.S. Atty. (argued and briefed), Office of the U.S. Attorney, Lexington, KY, Barbara L. Herwig, Katherine S. Gruenheck, U.S. Dept. of Justice, Appellate Staff, Civil Division, Washington, DC, for William B. Reeves.

D. Brent Irvin (argued and briefed), Office of the Attorney General, Frankfort, KY, for Thomas J. Smith, III.

Kenneth W. Smith (argued and briefed), Roberts & Smith, Lexington, KY, for Robert G. Stephens.

Before: ENGEL, BROWN, and MILBURN, Circuit Judges.

ENGEL, Circuit Judge.

William Reeves, a federal postal inspector, Robert Stephens, a Kentucky state police

detective, and Thomas Smith, a Kentucky commonwealth prosecutor (referred to collectively as "the officials") appeal the district court's denial of their motions for summary judgment based on qualified immunity in the suit brought against them by David Greene and his wife, Starna Hill. Greene and Hill sued the officials under 42 U.S.C. § 1983 and 42 U.S.C. § 1985 and asserted pendent state claims of malicious prosecution, abuse of process, and defamation. The suit was based on the officials' actions with respect to an investigation of the couple's activities involving child pornography. The couple was indicted, but all charges eventually were dropped, and the couple decided to sue Reeves, Stephens, and Smith. The officials moved for summary judgment on the grounds of qualified immunity, and the district court denied their motions. They appeal to this Court under the collateral order doctrine. Because we find that the officials were entitled to qualified immunity, we reverse.

## I.

This dispute concerns a photo[1] taken by Hill of her and Greene's six-year-old daughter in 1991. In the photo, the girl is sitting on Greene's lap, and her dress is situated so that her unclothed genital area is clearly visible. Hill sent the photo to a friend, Freda Wyatt, as a postcard. She wrote a note on the back of the photo, addressed the card to Wyatt, and mailed it.

A postal worker saw the photo and referred it to Reeves, a prohibitive mail specialist. Reeves began an investigation of whether the card violated federal law, and he visited Wyatt, the would-be recipient. Wyatt told Reeves that the postcard was from Hill, and although she expressed shock at the photo, she told Reeves that Hill and Greene were "strange." Reeves then contacted Stephens, because it was the usual procedure for state and federal authorities to cooperate in such an investigation. Both Reeves and Stephens thought that there was probable cause to arrest Hill and Greene and to search their home. Needing a prosecutor's assistance in this regard, they contacted Smith.

The parties dispute what opinion Smith may have expressed as to the existence of probable cause, but in any event, he prepared the necessary affidavits and warrants to present to a state judge. The judge signed the search and arrest warrants. Police officers, including Stephens, along with Reeves, went to Greene and Hill's home to execute the warrants. The police found and confiscated nine photo albums and eighteen videotapes containing images of nude or partially nude children and adults. After the search, Greene and Hill were arrested and charged with violating Ky.Rev.Stat. § 531.320, promoting a sexual performance by a minor, and Ky.Rev.Stat. § 531.020, distribution of obscene matter.

Greene and Hill were taken to the police station, held in custody for about twenty minutes, and released on bond. Two weeks later, a grand jury handed down an indictment under Ky.Rev.Stat. § 531.340, distribution of matter portraying a sexual performance by a minor, based on the mailing of the one photo. This offense was a misdemeanor, so responsibility for the case shifted from Smith to a county attorney. The county attorney dismissed the charges.

Five months later, Greene and Hill filed suit under 42 U.S.C. § 1983 against Reeves, Stephens, and Smith, alleging that the officials had violated their right to due process and equal protection and their right to be free from unreasonable search and seizure. They also alleged that the officials had conspired to violate their rights in violation of 42 U.S.C. § 1985. They further alleged pendent state claims of malicious prosecution, abuse of process, and defamation. The district court dismissed the state claims with respect to Reeves. Reeves and Stephens moved for summary judgment based on qualified immunity. Smith moved for summary judgment based on absolute prosecutorial immunity or, in the alternative, qualified immunity and on the plaintiffs' failure to state a claim. The district court held that all three officials were entitled to qualified immunity with respect to the procurement of the search warrant, but it declined to grant qual-

[1] The court has examined the original photo-     postcard.

ified immunity to any of the officials as to the arrest warrant. It therefore granted the summary judgment motions in part but denied them in part and ordered discovery to proceed as to the § 1983 claim and the pendent state claims.

## II.

### A.

■ We have jurisdiction over this appeal under the collateral order doctrine. *See Walton v. City of Southfield,* 995 F.2d 1331, 1335 (6th Cir.1993). Qualified immunity is an issue of law, and therefore we review de novo the denial of summary judgment based on qualified immunity. *Yates v. City of Cleveland,* 941 F.2d 444, 446 (6th Cir.1991).

### B.

■ Under the doctrine of qualified immunity, government officials acting in their official capacities are protected from being sued in their individual capacities for damages if their actions did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see also Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."). When a defendant moves for summary judgment based on qualified immunity, as the officials in this case did, the plaintiff must therefore

1) identify a clearly established right alleged to have been violated; and 2) establish that a reasonable officer in the defendant's position should have known that the conduct at issue was undertaken in violation of that right.

*Pray v. City of Sandusky,* 49 F.3d 1154, 1158 (6th Cir.1995).

In the context of arrests, the Supreme Court has made it very clear that the qualified immunity doctrine provides officers broad protection. In *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), the Court reviewed a case in which plaintiffs alleged that an officer had caused them to be arrested unconstitutionally by presenting to a judge a complaint and supporting affidavit that failed to establish probable cause. Noting that the qualified immunity doctrine is "specifically designed to 'avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment,'" *id.* at 341, 106 S.Ct. at 1096 (quoting *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738), the Court articulated the standard governing the case:

Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized.

*Id.* The Court later framed the inquiry as follows: "Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable ... will the shield of immunity be lost." *Id.* at 344–45, 106 S.Ct. at 1097–98.

Five years later, in *Hunter v. Bryant,* 502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991), the Court reiterated the qualified immunity standard in a case involving an arrest, holding that the doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Id.* at 229, 112 S.Ct. at 537 (quoting *Malley,* 475 U.S. at 341, 106 S.Ct. at 1096). *Hunter* established that the determination of whether qualified immunity applies to an officer's judgment as to probable cause is one for the court, not the jury, to make. The Court criticized the Ninth Circuit's misapplication of the doctrine:

The Court of Appeals' confusion is evident from its statement that "[w]hether a reasonable officer could have believed he had probable cause is a question for the trier of fact, and summary judgment ... based on lack of probable cause is proper only if there is only one reasonable conclusion a jury could reach." This statement of law is wrong for two reasons. First, it routinely places the question of immunity in the hands of the jury. Immunity ordinarily

should be decided by the court long before trial. Second, the court should ask whether the [officers] acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed. . . .

*Id.* at 227–28, 112 S.Ct. at 536–37 (citations omitted); *see also Garvie v. Jackson,* 845 F.2d 647, 649 (6th Cir.1988) ("The question of whether qualified immunity attaches to an official's actions is a purely legal question for the trial judge to determine prior to trial.").

### C.

■ The district court cited *Malley* and *Hunter* in applying the qualified immunity doctrine. It framed the issue as whether the officials reasonably calculated that it was "more likely than not" that Greene and Hill had committed the crime of promoting a sexual performance of a minor under Kentucky law. (Mem. Op. & Order at 12.) The court commented extensively on the cursory nature of the investigation by Reeves and Stephens, finding that investigations in other child pornography cases were "much detailed and abundantly more cautious." Apparently based on this comparison, the court found that it was not reasonable for the officials to conclude that probable cause existed to arrest Greene and Hill based on the picture of their daughter. The court further found that the photo did not reasonably suggest that Greene and Hill were involved in "full blown child pornography." The court found no Kentucky cases interpreting Kentucky's definition of obscenity for the purposes of child pornography statutes, but it nonetheless commented that the officials "should have known better" than to think that the photo created probable cause of a violation of Kentucky law. (*Id.* at 16–17.) The court offered the following explanation of its holding:

The Court understands that a jury might well decide that . . . it was reasonable for the postal inspector and state trooper to think probable cause existed for thearrest of plaintiffs. . . . On the other hand, they

might well decide [that it was not reasonable].

(*Id.* at 17–18.)

The district court opinion does not strictly follow the *Hunter* mandates against placing qualified immunity in the hands of a jury and against requiring the most reasonable interpretation of events. The court's holding that "it was not reasonable for Reeves or Stephens to conclude that probable cause existed for the arrest," (*id.* at 16), satisfies *Hunter,* but the above-quoted comment about a hypothetical jury shows at least some confusion on the court's part about the application of the standard.

■ Whether the officials involved reasonably concluded that it was "more likely than not" that Greene and Hill had committed a crime is also an improper standard in applying a qualified immunity test. The Supreme Court has never quantified the degree of certainty required for a determination of probable cause. The closest the Court has come to doing so was in *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949), when it commented that probable cause means something "less than evidence which would justify . . . conviction" but "more than bare suspicion." *Id.* at 175, 69 S.Ct. at 1310–11. The Court later commented that "probable cause determination . . . does not require the fine resolution of conflicting evidence that a reasonable-doubt or even a preponderance standard demands." *Gerstein v. Pugh,* 420 U.S. 103, 121, 95 S.Ct. 854, 866–67, 43 L.Ed.2d 54 (1975).

■ The court's unfavorable comparison of the officials' investigation to more thorough investigations in other child pornography cases further manifests questionable logic. The district court thought that the officials had no reason to believe that Greene and Hill were involved in "full blown" child pornography, but officials need not uncover an extensive distribution network before making arrests under child pornography laws. The comparison is not relevant to the issue of whether the officials reasonably concluded from the one photo that there was probable cause to arrest Greene and Hill for violating Kentucky law, and it is certainly not relevant

with respect to whether any reasonable officer would have known that in so concluding, a matter over which many persons could honestly disagree, the actions taken plainly violated established constitutional rights. This is and, since *Harlow,* has been the single ultimate standard for applying qualified immunity. To the extent that the district court's holding represents the application of some other or lesser standard, it is in error.

■■■■ The district court's apparent distinction between probable cause to search and probable cause to arrest is also troublesome. The two determinations are measured by similar objective standards but contain different inquiries. This court has enunciated the following requirement for probable cause to arrest:

> that the police have "reasonably trustworthy information ... sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense."

*Centanni v. Eight Unknown Officers,* 15 F.3d 587, 592 (6th Cir.) (quoting *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225–26, 13 L.Ed.2d 142 (1964)) (first alteration in *Centanni* ), *cert. denied,* —— U.S. ——, 114 S.Ct. 2740, 129 L.Ed.2d 860 (1994). As to searches, the standard is similar:

> The probable cause requirement ... is satisfied if the facts and circumstances are such that a reasonably prudent person would be warranted in believing that an offense had been committed and that evidence thereof would be found on the premises to be searched.

*United States v. Besase,* 521 F.2d 1306, 1307 (6th Cir.1975). While the focus of the two tests is of course different—whether the person has committed a crime or whether evidence of a crime will be found—the prudent person standard is the same. Professor La-Fave notes that "[i]t is generally assumed by the Supreme Court and the lower courts that the *same quantum of evidence* is required whether one is concerned with probable cause to arrest or probable cause to search." 1 LaFave, *supra,* § 3.1(b), at 544 (emphasis added). LaFave recognizes that the focus of the arrest inquiry is different from that of

the search inquiry and acknowledges that "there may be probable cause to search without probable cause to arrest, and vice-versa." *Id.* at 546. Here, both findings must ultimately stand or fall on the same evidence. If it was reasonable to obtain a search warrant, it had to be equally reasonable to obtain the arrest warrant. We fail to see a reasoned basis for the district court's distinction.

A further observation supports our conclusion. The district court denied qualified immunity to the officials because it found that the officials' efforts to procure an arrest warrant were unreasonable in light of Kentucky child pornography law. While the district court found that the photo was not suggestive enough to be "obscene," it did not properly acknowledge the vagueness and breadth of Kentucky's current child pornography law.

A case relied on by Greene and Hill, *Bach v. Commonwealth,* 703 S.W.2d 489 (Ky.Ct. App.1985), applied an old Kentucky statutory definition of obscenity that was narrower than the current version and therefore is not directly relevant. The case is instructive, though, in illustrating the effect of the Supreme Court's decision in *New York v. Ferber,* 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982), on child pornography law. In *Ferber,* the Supreme Court reviewed New York's child pornography statute. The statute prohibited a wide range of materials, including those that were not necessarily "obscene" under the three-part test of *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). Under *Miller,* the regulation of obscene materials is limited to

> works which, taken as whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value.

*Id.* at 24, 93 S.Ct. at 2614–15. In *Ferber,* the Second Circuit held that the New York statute was unconstitutional under *Miller,* but the Supreme Court upheld the statute, holding that "the States are entitled to greater leeway in the regulation of pornographic depictions of children." *Ferber,* 458 U.S. at 756, 102 S.Ct. at 3354.

In *Bach*, the Kentucky Court of Appeals reviewed a conviction for use of a minor in a sexual performance under Ky.Rev.Stat. § 531.310. Under section 531.300(6), "sexual performance" must include "sexual conduct"; under section 531.300(4), "sexual conduct" must be "obscene." At the time of *Bach*, "obscenity" was defined in section 531.300(3) to reflect the three-part *Miller* test almost word for word. The *Bach* court held that the photos and videotapes that led to the conviction were not "obscene" under the then-current definition, but it noted that under *Ferber*, the Kentucky legislature was free to amend the obscenity statute with respect to child pornography to encompass a wider range of conduct. *Bach*, 703 S.W.2d at 490–91.

The Kentucky legislature amended the statute in 1986, years before Hill mailed the photo in question. The definition of "obscene" as used in the child pornography laws now reads as follows: " 'Obscene' means the predominate appeal of the matter taken as a whole is to a prurient interest in sexual conduct involving minors." Ky.Rev.Stat. § 531.300(3). The only case that had interpreted this definition when the officials sought arrest warrants for Greene and Hill [2] was *Gilbert v. Commonwealth*, 838 S.W.2d 376 (Ky.1991). In *Gilbert*, the court held that a stepfather who ordered his three stepdaughters to strip as a form of discipline and forcibly removed their clothes when they refused had engaged in "obscene" conduct under section 531.300(3). *Id.* at 379–80.

Greene and Hill argue that the issuance of the arrest warrant by the state judge does not shield the officers from liability. We agree that issuance of the warrant is not an automatic bar, but only one factor in applying the test of "reasonable professional judgment" to the officers' conduct. *Malley,* 475 U.S. at 345–46, 106 S.Ct. at 1098–99. At the same time, we cannot help but observe that a postal worker, a prohibitive mail specialist, a Kentucky state police detective, a commonwealth prosecutor, the judge issuing the arrest warrant, and a grand jury were sufficiently concerned over the conduct of mailing the photo-postcard to take action based upon it. To be sure, it is at least theoretically possible that all these officials and the grand jury could have been not only wrong but unreasonable, but the odds against such a coincidence are staggering.

We have examined the photo in question. It is certainly true that that which is art and that which is in questionable taste and that which, because it portrays a six-year-old child, is violative of Kentucky's child pornography statutes are bound at times to be difficult to distinguish. So, plainly, were they here. The broad range of reasonable professional judgment accorded the defendants here was not exceeded. Under standards in *Harlow, Anderson, Malley,* and *Hunter,* the officials were entitled to qualified immunity.

### III.

For the foregoing reasons, the judgment of the district court is REVERSED and the case is REMANDED with instructions to dismiss the defendants from the suit.

---

**2.** Officials' conduct must evaluated in light of information they should have known at the time of the conduct. *See Mitchell v. Forsyth*, 472 U.S.

511, 535, 105 S.Ct. 2806, 2820, 86 L.Ed.2d 411 (1985).