**Dale JAG, Plaintiff,**

**v.**

**CITY OF WARREN, a municipal corporation, Police Officer Brymer (Badge No. 111), Police Officer Pierog, (Badge No. 107), Detective Chris Wouters (Badge No. 47), Sergeant Cliff Kujawa (Badge No. 515), (Individually and in their Official Capacity), Jointly and Severally, Defendant.**

**Civil Action No. 95–40228.**

United States District Court,
E.D. Michigan,
Southern Division.

Nov. 5, 1996.

Robert J. Squiers, Garan, Lucow, Miller Seward & Becker, PC, Detroit, MI, for Cliff Kujawa.

Michael J. Kowal, Lincoln Park, MI, for Dale Jag.

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

Before the court is the defendants', City of Warren, Police Officer Brymer, Police Officer Pierog, Detective Wouters, and Sergeant Kujawa, ("Defendants") motion for summary

judgment, pursuant to Federal Rule of Civil Procedure ("FRCP") 56, filed on July 31, 1996. The defendants seek an order dismissing the instant complaint based on the complete defense of qualified immunity. Since the plaintiff, Dale Jag, ("Jag") has failed to show that there is a genuine issue of material fact as to the defense of qualified immunity, this court will grant summary judgment in favor of the defendants.

## Factual background

At 4:21 a.m. on Sunday, October 3, 1993, Warren Police Officers Pierog ("Pierog") and Brymer ("Brymer") were patrolling a residential area of Warren. The officers observed Jag seated behind the wheel of a station wagon parked on a residential street. The officers state that they initially observed Jag leaning forward in the car concealing his face and hands from them. As the officers drove past the car, they shined a light into the car. They then state that Jag abruptly leaned across the front passenger seat in an attempt to conceal something. Jag maintains that he was only changing his clothes but admits that in the process of removing his vest he had to lean forward toward the steering wheel. Jag also admits laying his vest on the front passenger's seat although it is not clear, from the record, at what point he did this. The officers parked and approached Jag's car on foot. The officers then state that they asked Jag to exit the car because they feared he might be armed. Upon exiting the car, the officers requested that Jag present identification. Officer Pierog states that he observed a "stun gun" partially exposed in the right front pocket of a leather jacket lying in the back seat of Jag's car. Jag admits to having put the "stun gun" in the jacket. When questioned about the "stun gun," Jag admitted owning it but said he thought it was legal to possess a "stun gun" in Michigan. Jag said he was from California and said that he believed it was legal to possess one there. The officers then placed Jag under arrest. Jag was secured in hand-cuffs and seated in the back of the patrol car. The officers state that they then proceeded to search Jag's car including a duffle bag in which they found various sado-masochistic paraphernalia.

Jag, on the other hand, denies that he was trying to hide from the police and states that he was merely changing his clothes. Jag points out that he was stopped under a street light, with his dome light on and headlights on and that these facts indicate that he was not trying to hide. However, Jag does admit to having leaned forward and down toward the steering wheel while taking off his vest. Specifically, Mr. Seward, the attorney for the defendants, asked Jag at his deposition:

Q. Well, I'm asking—the question was, did you put your head down by the steering wheel and you're saying you were taking off the vest. Now, my question is, in the act of taking off the vest, might you have put your head forward and down by the steering wheel, that's my only question?

A. I would imagine I had to, because you have to pull it forward and remove.

Jag also stated in his deposition that only one officer, the driver, approached his car, although he claims in his pleading that both officers approached his car. Moreover, Jag claims, in his pleading, that he was then told to exit his car and was placed in handcuffs and, without being told he was under arrest, placed in the back of the patrol car. Jag claims that it was then that the officers searched his vehicle and discovered the "stun gun." Finally, Jag, in his pleading, claims that the "stun gun" was fully concealed, although in his deposition, Jag only states that the "stun gun" was in his coat and does not state that it was completely concealed.

After Jag's arrest, the officers drafted an incident report and turned it over to Sgt. Kujawa, their shift supervisor, who determined that the report was complete and signed it. Detective Wouters reviewed the incident report, and found it to be sufficient. He prepared and submitted a Request for Warrant Authorization on October 4, 1993 which was denied by Assistant Prosecuting Attorney Elienko ("Elienko"). Although Elienko believed that there was sufficient probable cause to justify the arrest, he felt that the pre-trial motions necessary to resolve any probable cause issues were not worth the time and effort that would be required in light of the relatively minor offense. On

October 5, 1993, Jag, who had previously been released on bond after approximately 8 hours of detention, was informed that all charges had been dropped.

## Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the non-moving party's case on which the non-moving party would bear the burden of proof at trial. *Martin v. Ohio Turnpike Commission,* 968 F.2d 606, 608 (6th Cir.1992); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the non-moving party. *60 Ivy Street Corporation v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987). The court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435–36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment where proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984). In other words, the disputed fact must be one which might affect outcome of the suit under the substantive law controlling the issue. *Henson v. National Aeronautics and Space Administration,* 14 F.3d 1143, 1148 (6th Cir.1994). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* Accordingly, where a reasonable jury could not find that the non-moving party is entitled to a verdict,

there is no genuine issue for trial and summary judgment is appropriate. *Feliciano v. City of Cleveland,* 988 F.2d 649 (6th Cir. 1993).

Once the moving party carries its initial burden of demonstrating that no genuine issues of material fact are in dispute, the burden shifts to the non-moving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the non-moving party must present more than just some evidence of a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986):

> There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the [non-moving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *see also Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Consequently, the non-moving party must do more than raise some doubt as to the existence of a fact; the non-moving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd,* 929 F.2d 701 (6th Cir.1991). While the evidence itself need not be the sort admissible at trial, it must be more than the non-moving party's pleadings. *Ashbrook v. Block,* 917 F.2d 918, 921 (6th Cir.1990). FRCP 56(e) provides, in part, that:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if

appropriate, shall be entered against the adverse party.

## Analysis

### 1. Qualified Immunity

Under the doctrine of qualified immunity, government officials acting in their official capacities are protected from being sued in their individual capacities for damages if their actions did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Greene v. Reeves*, 80 F.3d 1101, 1104 (6th Cir.1996) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). Therefore, when a defendant moves for summary judgment based on qualified immunity, as is the case here, the plaintiff must:

> 1) identify a clearly established right alleged to have been violated; and 2) establish that a reasonable officer in the defendant's position should have known that the conduct at issue was undertaken in violation of that right.

*Greene*, 80 F.3d at 1104 (quoting *Pray v. City of Sandusky*, 49 F.3d 1154, 1158 (6th Cir.1995).

In the context of arrests, the Supreme Court has made it very clear that the qualified immunity doctrine provides officers broad protection. In *Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), the Court, in reviewing a case where the plaintiffs alleged that probable cause was not established, as does the instant plaintiff, noted that the qualified immunity doctrine is "specifically designed to 'avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment.'" *Id.* at 341, 106 S.Ct. at 1096 (quoting *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738). The *Malley* court articulated the applicable standard:

> Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized.

*Id.* The Court went on to state that "[o]nly where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable ... will the shield of immunity be lost." *Id.* at 344–45, 106 S.Ct. at 1098.

In *Hunter v. Bryant*, 502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991), the Court reiterated the qualified immunity standard holding that the doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Id.* at 229, 112 S.Ct. at 537 (quoting *Malley*, 475 U.S. at 341, 106 S.Ct. at 1096). Moreover, "*Hunter* established that the determination of whether qualified immunity applies to an officer's judgment as to probable cause is one for the court, not the jury, to make." *Greene*, 80 F.3d at 1104–05 (citing *Hunter*, 502 U.S. at 227–28, 112 S.Ct. at 536–37). *See also Garvie v. Jackson*, 845 F.2d 647, 649 (6th Cir.1988) ("The question of whether qualified immunity attaches to an official's actions is a purely legal question for the trial judge to determine prior to trial.").

In the instant case, Jag succeeds in establishing an alleged violation of a right, to wit: his Fourth Amendment protection against unlawful searches and seizures. However, Jag is unable to satisfy the second requirement needed to defeat a motion for summary judgment based on qualified immunity, namely, that a reasonable officer in the defendants' position should have known that the conduct at issue was undertaken in violation of that right.

Jag mischaracterizes the inquiry as being one to determine whether there is a question of fact as to the existence of probable cause. Instead, the proper inquiry is whether there is a question of fact as to whether a reasonably competent officer could have concluded that probable cause existed. The distinction is subtle but significant. As such, it is possible that a defendant may be entitled to qualified immunity if he acted reasonably at the time even if it is later determined that there was insufficient probable cause for conviction. *Cf. Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir.1988) (holding that a valid arrest based upon then-existing probable cause is not vitiated if the suspect is later found innocent) (*citing United States v. Covelli*, 738

F.2d 847, 854 (7th Cir.), *cert. denied,* 469 U.S. 867, 105 S.Ct. 211, 83 L.Ed.2d 141 (1984)).

That being said, Jag is unable to create an issue of material fact as to the reasonableness of the officers conclusion that probable cause existed. Jag admits in his deposition that he was parked on a residential street at 4:21 a.m. on a Sunday morning. Jag also admits seeing the police car approach him and shine a light inside his car. Furthermore, Jag admits making gestures consistent with a person trying to hide himself or something. Specifically, Jag admits that he would have had to have put his head forward and down during the process of removing his vest in his car. Jag also admits laying his vest on the front passenger's seat which is consistent with the police officer's statement that Jag abruptly leaned across the front passenger seat in what appeared to be an attempt to conceal something. These facts are not disputed and arguably support a finding that the officers, based on the totality of the circumstances, *see United States v. Brignoni–Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975), could have reasonably concluded that there was probable cause to arrest Jag. A conclusion by the officers that probable cause existed at this time cannot be said to have been "plainly incompetent" or to have been knowingly in violation of the law. As such, they would be entitled to qualified immunity irrespective of whether sufficient probable cause for a conviction actually existed at that point.

■ However, this court need not determine whether a reasonable police officer could have concluded that there was probable cause to arrest Jag at that point because Officer Pierog goes on to state that he observed a "stun gun" partially exposed in the right front pocket of Jag's jacket which was lying on the back seat of Jag's car. Thereafter, Pierog seized the "stun gun." This would clearly be a proper warrantless seizure of a weapon in "plain view." *See United States v. Weatherspoon,* 82 F.3d 697 (6th Cir.1996) (finding that once officer legitimately saw barrel of gun sticking out from under seat of lawfully stopped vehicle, he

could lawfully seize gun without warrant under "plain-view" doctrine).

Jag admits, in his deposition, that the "stun gun" was in his jacket on the back seat, but does not state whether it was fully concealed. Only in his pleadings does Jag claim that the "stun gun" was fully concealed within the coat. That allegation is not a sufficient basis upon which to contradict Pierog's statement that the "stun gun" was partially exposed and in "plain view." Jag utterly fails to support his allegation, that the "stun gun" was concealed, with any specific facts which would create a genuine issue of fact. Instead, he merely relies on his pleadings. As such, Jag has failed to meet his burden, and summary judgment is appropriate. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Goins v. Clorox Co.,* 926 F.2d 559, 562 (6th Cir.1991); *Gregg v. Allen–Bradley Co.,* 801 F.2d 859, 861 (6th Cir.1986) (stating that the "nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint.").

■ The Sixth Circuit, as far back as 1975, has determined that summary judgment was proper where the facts alleged in the complaint were directly controverted in the affidavits supporting the defendant's summary judgment motion and where the plaintiff's version of the facts was not presented in any deposition, affidavit, or other document on file, except the pleadings. *See R.E. Cruise, Inc. v. Bruggeman,* 508 F.2d 415, 416 (6th Cir.1975). Nowhere in his deposition does Jag state that the "stun gun" was completely concealed. Moreover, Jag does not show, by means of an affidavit or by other methods permitted by FRCP 56, any support for his contention that the "stun gun" was fully concealed and not in "plain view." As such, Jag has failed to show that the arresting police officers unreasonably concluded that probable cause existed and therefore Jag has failed to satisfy the second requirement to defeat a summary judgment motion based on qualified immunity. As such, summary judgment will be granted in favor of the defendants based on qualified immunity.[1]

1. Jag's argument, that even if there is probable

cause to arrest there was not sufficient probable

### 2. Dismissal of claims on the basis of qualified immunity

Because the absence of probable cause is an element of Jag's prima facie case for each of his federal claims—42 U.S.C. § 1983 and 42 U.S.C. § 1985—as well as for three of his state law claims—malicious prosecution, false arrest and false imprisonment—this court will grant summary judgment for the arresting officers as to those claims. *See Russo v. City of Warren,* 1995 WL 276257, *4 (6th Cir. May 9, 1995). Moreover, the above finding of qualified immunity for the arresting officers naturally flows to the other police officials involved in this case as well as the City of Warren because Jag has failed to proffer any evidence that he was injured as a result of an unconstitutional policy, procedure or custom of the City of Warren. *See Monell v. Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978) (concluding that plaintiff must prove that he was injured as a direct result of an unconstitutional policy, procedure, or custom of the governmental entity).

### 3. Dismissal of remaining state law claims

■ Jag's remaining state law tort claims must also be dismissed on a grant of summary judgment. While it is true that, as a general rule, intentional torts are not protected by governmental immunity, governmental actions which would normally constitute intentional torts are protected by governmental immunity if those actions are justified. *Brewer v. Perrin,* 132 Mich.App. 520, 528, 349 N.W.2d 198 (1984). Specifically, a police officer may use reasonable force when making an arrest. *Id.* Jag alleges that the defendants used unreasonable force by placing handcuffs on him and that this constitutes an assault and battery. However, the use of handcuffs, by itself, is not un-

reasonable force. *Id.* at 529, 349 N.W.2d 198. Because Jag has not made a prima facie showing of unreasonable force by the arresting officers, this court can properly grant summary judgment on the assault and battery claim as to defendants Pierog and Brymer. *See id.* With respect to the remaining named defendants, Jag has not alleged any contact let alone an unlawful contact. As such, this claim must be dismissed against all defendants.

■ Similarly, Jag has failed to make a prima facie showing on his intentional infliction of emotional distress claim. That claim requires a showing of severe emotional distress. *Linebaugh v. Sheraton Michigan Corp.,* 198 Mich.App. 335, 342, 497 N.W.2d 585 (1993). "Liability for the intentional infliction of emotional distress has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* This court finds that, based on the record before it, no reasonable trier of fact could find that the defendants conduct rose to the level of intentional infliction of emotional distress. As such, this claim is dismissed against all the defendants.

Finally, Jag has failed to make a prima facie showing on his gross negligence claim. In order to prevail on this claim, Jag must show that the defendants' conduct was so "reckless as to demonstrate a substantial lack of concern for whether an injury would result." M.C.L. 691.1407(2)(c). This court finds that, based on the record before it, no reasonable trier of fact could find that the defendants' conduct rose to the level of gross negligence. As such, this claim must be dismissed against all defendants.

---

cause to search, is a distinction without a difference. The Sixth Circuit has stated that "[w]hile the focus of the two tests is of course different—whether the person has committed a crime or whether evidence of a crime will be found—the prudent person standard is the same." *Greene,* 80 F.3d at 1106. The *Greene* court recognized that although "there may be probable cause to search without probable cause to arrest, and vice-versa," *id.,* "[i]t is generally assumed by the

Supreme court and the lower courts that the *same quantum of evidence* is required whether one is concerned with probable cause to arrest or probable cause to search." *Id.* (quoting citation omitted) (emphasis in the original). As such, Jag's argument will fail because, as discussed above, this court finds that there is a sufficient quantum of evidence to support a finding of probable cause.

### Conclusion

In sum, for the reasons set forth above, this court will grant summary judgment in favor of the defendants.

### ORDER

It is hereby **ORDERED** that the defendants', CITY OF WARREN, POLICE OFFICER BRYMER, POLICE OFFICER PIEROG, DETECTIVE CHRIS WOUTERS, AND SERGEANT CLIFF KUJAWA, motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56, is **GRANTED** and plaintiff DALE JAG take nothing.

**SO ORDERED.**