Lorne ADAMS, et al., Plaintiff,

v.

TOWNSHIP OF CHAMPION, OHIO, et al., Defendants.

No. 4:98CV2480.

United States District Court, N.D. Ohio, Eastern Division.

Oct. 21, 1999.

Alan S. Belkin, Law Offices Of Alan S. Belkin, Cleveland, OH, for Plaintiffs.

John Thomas McLandrich, Jeffrey T. Kay, Mazanec, Raskin & Ryder, Solon, OH, for Defendants.

1. In their original complaint, the Plaintiffs allege that the Defendants violated their Fourteenth Amendment rights. (Complaint ¶ 5.) However, Plaintiffs admit to erroneously pleading that constitutional provision and seek to amend their Complaint to assert a violation of the Fourth Amendment as incorporated against the states through the due process clause of the Fourteenth Amendment.

## MEMORANDUM OPINION AND ORDER

ECONOMUS, District Judge.

This matter is before the Court upon the Motion of the Defendants for summary judgment (Dkt.# 16). In Count One of their Complaint. (Dkt.# 1), the Plaintiffs allege that the Defendants violated their Fourth Amendment right to be free from unlawful arrest and detention and that Champion Township failed to train and/or failed to maintain a policy to prevent unlawful arrests.[1] Champion Township Police Officer Kelly Boyle ("Boyle") is sued in his individual capacity under 42 U.S.C. § 1983. The Plaintiffs additionally assert in Count Two (Dkt.# 1), that the Defendants are liable for intentional infliction of emotional distress as a result of the arrest of Plaintiff Lorne Adams ("Mr.Adams") (Dkt.# 1).

For the following reasons, the Defendants' summary judgment motion (Dkt.# 16) is **GRANTED**.

## FACTS

The following facts are undisputed. On the evening of August 4, 1997, Officer Kelly Boyle of the Champion Township Police Department, received a statement from Daniel J. Adams ("Daniel Adams"), who alleged that his stepfather threw him on the sofa, slapped him across the face, and punched him in the lower back. Subsequently, Officer Boyle instructed Daniel Adams to remove his shirt and observed a "roundish red area in the lower region of his [Daniel Adams's] back."[2] (Appendix A to Def.'s Mot. to Dismiss.) Shortly thereafter, Daniel Adams executed a domestic

(Memorandum In Response To Defendants' Motion To Dismiss ("Response") at 2.) Under the liberal provisions of FED.R.CIV.P. 15(a), this Order grants the amendment and considers the claim as based on a violation of the Fourth Amendment.

2. Mr. Adams denied punching Daniel Adams in the back at the time of his arrest.

violence summons and complaint against his stepfather, Plaintiff Lorne Adams.

Acting on Daniel Adams' written complaint, Officer Boyle and a Trumbull County Sheriff's Deputy arrived at the Adams' home and escorted Mr. Adams to the Champion Police Station. Once there, Mr. Adams was handcuffed and transported to the Trumbull County Jail where he spent the night. The following morning, Mr. Adams appeared before the Warren Municipal Court on charges of domestic violence. He was acquitted of all charges on or about December 3, 1997.

Mr. Adams, through his affidavit, has presented additional facts concerning the evening in question. Mr. Adams states that on August 4, 1997, he heard his wife, Laura Adams ("Mrs.Adams") cry out for help. When he responded to her pleas, he witnessed Daniel Adams violently shove her over a coffee table. Mr. Adams immediately intervened by holding Daniel in a bear hug and pinning him to the floor. According to Mr. Adams, similar outbursts from Daniel were common and this method of intervention was often used to calm him down. After a few minutes Daniel Adams relaxed and Mr. Adams permitted him to leave the home. Approximately one hour later, Officer Boyle and a Sheriff's Deputy arrived at the home and informed Mr. Adams that a domestic violence complaint had been filed against him.

At around this time, Mr. Adams explained his version of the story to Officer Boyle and the Deputy Sheriff. Officer Boyle showed Mr. Adams the summons and informed him that probable cause existed for his arrest. After viewing this summons, Mr. and Mrs. Adams indicated their intent to file charges against Daniel for his earlier violence toward Mrs. Adams. Officer Boyle, however, did not take statements or any accept the charges made by the Plaintiffs and proceeded with the arrest.

Mr. Adams alleges that Officer Boyle had arrested Daniel Adams in the past for wielding a knife against his mother. Additionally, at some time during the events in the instant case, Mr. Adams states that he heard other officers arguing with Boyle regarding whether to proceed with his arrest. Despite Officer Boyle's history with the Adams family, he arrested Mr. Adams and escorted him to the Champion Police Station. Following Mr. Adams' subsequent acquittal in 1997, he and Mrs. Adams initiated this 42 U.S.C. § 1983 action against Officer Boyle.

## SUMMARY JUDGMENT

FED.R.CIV.P. 56(c) governs summary judgment and provides, in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the evidence submitted must be viewed in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

"The burden on the moving party may be discharged if the moving party demonstrates that the non-moving party has failed to establish an essential element of his or her case for which he or she bears the ultimate burden of proof at trial." *Morales v. American Honda Motor Co., Inc.*, 71 F.3d 531, 535 (6th Cir.1995). If the moving party meets this burden, then the non-moving party must present additional evidence beyond the pleadings. *Id.* The non-moving party must present more than a scintilla of evidence in support of his or her position. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment must be granted unless there is sufficient evidence favoring the non-moving party for judge or jury to return a

verdict for that party. *Id.* at 249, 106 S.Ct. 2505.

## QUALIFIED IMMUNITY

Section 1983 provides a cause of action against any person, who, under color of state law, deprives an individual of any right, privilege, or immunity secured by the Constitution and federal law. 42 U.S.C. § 1983 (1979). However, when officials are sued in their individual capacities, they may be protected from liability for damages if their alleged wrongful conduct was committed while they performed a function protected by qualified immunity. *See Cagle v. Gilley,* 957 F.2d 1347, 1348 (6th Cir.1992).

"The first step in a qualified immunity analysis is whether, based on the applicable law, a constitutional violation occurred." *Centanni v. Eight Unknown Officers,* 15 F.3d 587, 589 (6th Cir.), *cert. denied,* 512 U.S. 1236, 114 S.Ct. 2740, 129 L.Ed.2d 860 (1994); *Silver v. Franklin Township,* 966 F.2d 1031, 1035 (6th Cir. 1992). In determining whether or not a right is clearly established, courts "look first to decisions of the Supreme Court, then to decisions of this Court and other courts within our circuit, and finally to decisions of other circuits." *Buckner v. Kilgore,* 36 F.3d 536, 539 (6th Cir.1994).

■ Government officials are generally entitled to qualified immunity when performing discretionary functions as long as the conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In order to assert a violation of a "clearly established" right and defeat a qualified immunity defense "[t]he contours of a right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The Court utilizes an "objective reasonableness" standard to determine whether a government official would believe that a right is established. *See Long v. Norris,* 929 F.2d 1111, 1115 (6th Cir.1991). The Sixth Circuit explained that "the objective reasonableness test focuses on whether an official, given the facts that the official knew or reasonably should have known about the situation, should have known that his or her particular conduct would not pass scrutiny when applied to the law." *Id.* (citations omitted).

■ Individual claims of immunity must be analyzed on a fact-specific, case-by-case basis to determine whether the constitutional rights were so clearly established when the alleged misconduct was committed that any official in the defendant's position would understand that what they were doing violates those rights. *See Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Once disputed factual issues are resolved, the application of qualified immunity to the facts is a question of law for the court to decide. *Greene v. Reeves,* 80 F.3d 1101, 1104 (6th Cir.1996). In the case *sub judice,* there are no material facts in dispute.

In Count One of the Complaint, Plaintiffs allege that Officer Boyle arrested Mr. Adams without probable cause in violation of his Fourth Amendment right to be free from unlawful arrest and detention. The Sixth Circuit has clearly established that an arrest without probable cause is a violation of the Fourth Amendment. *See Centanni,* 15 F.3d at 591–592. However, when the question of probable cause to arrest arises in connection with an action under § 1983, "the qualified immunity doctrine provides officers broad protection." *Greene v. Reeves,* 80 F.3d at 1104. Additionally, the Sixth Circuit has held that "probable cause determinations, even if wrong, are not actionable as long as such determinations pass the test of reasonableness." *Jeffers v. Heavrin,* 10 F.3d 380, 381 (6th Cir.1993).

Probable cause exists where it is shown that "facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one of rea-

sonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). The Sixth Circuit in *United States v. Strickland*, 144 F.3d 412 (1998), held that "The Fourth Amendment ... necessitates an inquiry into probabilities, not certainty.... [T]here is no precise formula for determining the existence or nonexistence of probable cause; rather, a reviewing court is to take into account 'the factual and practical considerations of everyday life' that would lead a reasonable person to determine that there is a reasonable probability that illegality has occurred." *Id.* at 415 (citations omitted).

 Officer Boyle had probable cause to arrest Mr. Adams. Under Ohio law, where a written domestic violence complaint is filed and reasonably verified by the police, Revised Code § 2935.03 permits the arrest and detention of any person who is reasonably suspected of committing domestic violence. Additionally, Section 2935.03 defines a written domestic violence complaint as "reasonable cause" to initiate an arrest. Section 2935.03 provides in pertinent part:

> (B)(1) When there is reasonable ground to believe that ... the offense of domestic violence as defined in § 2919.25 of the Revised Code ... has been committed within the limits of the political sub-

division ... a peace officer described in (A)(1) of this section *may arrest and detain until a warrant can be obtained any person whom the peace officer has reasonable cause to believe is guilty of the violation.*

(B)(3)(a) For the purposes of division (B)(1) of this section, a peace officer described in that division has reasonable grounds to believe that the offense of domestic violence ... has been committed and *reasonable cause to believe that a particular person is guilty of committing the offense if any of the following occurs:*

> (i) A person executes a written statement alleging that the person in question has committed the offense of domestic violence ... against the person who executes the statement or the child of the person who executes the statement.

Ohio Revised Code Annotated § 2935.03 (West 1997) (emphasis added). Officer Boyle had reasonable grounds to believe that Mr. Adams committed the offense of domestic violence based upon the complaint and summons sworn by Daniel Adams and the physical evidence with which he was presented. Officer Boyle, therefore, had probable cause to arrest Mr. Adams.[3] As such, Mr. Adams' Fourth Amendment rights were not violated.[4]

Consequently, in the absence of a constitutional violation by Officer Boyle, Cham-

---

3. Revised Code Section § 2935.03(B)(3)(b) establishes that arrest is Ohio's preferred course of action in a domestic violence situation. Section 2935.03(B)(3)(b) reads in relevant part:

> If pursuant to division (B)(3)(a) of this section a peace officer has reasonable grounds to believe that the offense of domestic violence ... has been committed and reasonable cause to believe that a particular person is guilty of committing the offense, *it is the preferred course of action in this state that the officer arrest and detain that person* pursuant to division (B)(1) of this section until a warrant can be obtained.

*Id.* (emphasis added). Officer Boyle acted in accordance with Ohio law in arresting Mr. Adams on the charge of domestic violence.

The fact that Officer Boyle followed the preferred course of action under Ohio law is not dispositive of the Fourth Amendment issue. However, it is one factor that is indicative of the reasonableness of Officer Boyle's conduct under the circumstances.

4. Although probable cause existed to arrest Mr. Adams, he was acquitted of the charge of domestic violence. The Sixth Circuit has held that "A valid arrest based on then-existing probable cause is not vitiated if the suspect is later found innocent." *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir.1988). Therefore, the mere fact that Mr. Adams was later acquitted of the charge of domestic violence does not negate a finding of probable cause to arrest at the time the complaint was made by Daniel Adams.

pion Township cannot be held liable for failing to train him and/or for not maintaining a policy to prevent unlawful arrest. The Plaintiff's claims against Champion Township for failing to train and/or for not maintaining a policy to prevent unlawful arrest must also be dismissed.

The Plaintiffs attempt to overcome Officer Boyle's qualified immunity defense by alleging that Officer Boyle failed to adequately investigate Mr. Adams' claims of innocence. The Plaintiffs' argue that Officer Boyle, based on his experiences with Daniel Adams and the differing accounts of the events of August 4, 1997, should have further investigated Daniel Adams' complaint. (Response at 11.) However, the Plaintiffs' argument is without merit.

The Sixth Circuit has established that the level of credence an arresting officer must give to the claims of the accused is minimal. *See Criss*, 867 F.2d at 263. Moreover, a police officer does not have a duty to investigate or listen to the suspect's version of an event before making an arrest. *See Id.* Additionally, the Supreme Court held in *Baker v. McCollan*, 443 U.S. 137, 145, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), that the Constitution does not guarantee that only the guilty will be arrested, otherwise, § 1983 would provide a cause of action for every suspect released or acquitted. Officer Boyle did not have to investigate or consider Mr. Adams' claims against Daniel upon effecting the arrest. Because the Plaintiffs have not produced any reasonable evidence to overcome the Defendants' qualified immunity defense, summary judgment is proper.

## STATE CLAIMS

Finally, as the federal claims in this case have been resolved before trial, this Court declines to exercise supplemental jurisdiction over the remaining state claims. 28 U.S.C. § 1367(c)(3); *See also Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254–55 (6th Cir.1996).

## CONCLUSION

Defendant Kelly Boyle is entitled to summary judgment on the basis of qualified immunity where no constitutional violation occurred in arresting Plaintiff Lorne Adams.

Accordingly, the Defendants' Motion for Summary Judgment (Dkt.# 16) on Count One of Plaintiff's Complaint (Dkt.# 1) with respect to Kelly Boyle is hereby **GRANTED.**

Additionally, summary judgment is properly **GRANTED** on Count One of Plaintiff's Complaint (Dkt.# 1) with respect to Defendant Champion Township. Where Defendant Boyle did not violate Plaintiffs' Fourth Amendment rights, the Township cannot be held liable for a failure to train and/or failure to maintain a policy preventing unlawful arrest.

Accordingly, Plaintiffs' claims in Count One of their Complaint (Dkt.# 1) are hereby **DISMISSED with prejudice.** Plaintiffs' state law claims contained in Count Two of the Complaint (Dkt.# 1) are **DISMISSED without prejudice.**

**IT IS SO ORDERED.**