LINEBAUGH v SHERATON MICHIGAN CORPORATION

Docket No. 126717. Submitted November 5, 1992, at Grand Rapids. Decided March 1, 1993, at 9:10 A.M. Leave to appeal sought.

Sherry and Russell Linebaugh brought an action in the Cheboygan Circuit Court against Sheraton Michigan Corporation, Sherry's employer, and Rick Herring, one of her co-workers, alleging defamation, sexual harassment, and intentional or reckless infliction of emotional distress resulting from the circulation in Sherry's workplace of a cartoon drawn by Herring that allegedly depicted Sherry and a male co-worker engaged in a sexual act. The court, Robert C. Livo, J., granted summary disposition for the defendants. The plaintiffs appealed.

The Court of Appeals *held:*

1. The trial court erred in granting summary disposition for Herring with regard to the defamation claim. A reasonable trier of fact could conclude that the cartoon, whether captioned or uncaptioned, imputes a want of chastity to Sherry Linebaugh. A drawing that imputes a lack of chastity to a female is actionable per se, irrespective of special harm.

2. Summary disposition for Sheraton with regard to the defamation claim was proper. The cartoon was not drawn by Herring while he was in the discharge of his duties as an agent for Sheraton, nor was it done in relation to a matter about which his duties as an agent required him to act.

3. The trial court properly granted summary disposition for the defendants with regard to the claim of sexual harassment. The plaintiffs did not demonstrate that the cartoon was gender-oriented or that the harassment complained of was based on

REFERENCES

Am Jur 2d, Depositions and Discovery §§ 21-49, 153; Fright, Shock, and Mental Disturbance §§ 1-12, 53; Job Discrimination §§ 789-816; Libel and Slander §§ 60-61; Master and Servant §§ 404, 426-440.

Libel and slander: defamation by cartoon. 52 ALR4th 424.

Modern status of intentional infliction of mental distress as independent tort; "outrage". 38 ALR4th 998.

On-the-job sexual harassment as violation of state civil rights law. 18 ALR4th 328.

gender, an element of a claim for sexual harassment. The cartoon, allegedly depicting Sherry Linebaugh and a male co-worker engaging in a sexual act, is gender neutral and could be considered equally offensive both to male and female employees of Sheraton. In addition, upon receiving Sherry's complaint of harassment, Sheraton conducted an investigation and gave written warnings to Herring and a co-worker who posted the cartoon on a bulletin board.

4. The trial court erred in granting summary disposition for Herring with regard to the claim of intentional or reckless infliction of emotional distress. A reasonable factfinder could conclude that the depiction of Sherry engaged in a sexual act with a co-worker constituted conduct so outrageous in character and so extreme in degree that it went beyond all bounds of common decency in a civilized society. Furthermore, Herring's creation of the cartoon and his delivery of it to the co-worker who posted it may constitute reckless behavior. The question whether Herring's conduct was sufficiently outrageous and extreme was a matter for determination by the trier of fact.

5. Summary disposition was properly granted for Sheraton with regard to the claim of intentional infliction of emotional distress. An employer is liable for the tortious acts of its employee only when the acts are committed within the scope of employment. Even if Herring were found to have intentionally inflicted emotional distress upon Sherry Linebaugh, Sheraton would not be vicariously liable.

6. The trial court abused its discretion in denying the plaintiffs' motion to compel Herring to answer a question asked by the plaintiffs' attorney during his deposition and to which defense counsel objected on the basis of relevancy.

7. The trial court did not err in ordering the plaintiffs to answer the defendants' interrogatories regarding the subject matter and substance of their lay witnesses' expected testimony at trial. The scope of discovery with regard to a party's lay witness is limited only by the provisions of MCR 2.302(B)(1). Because the interrogatories may relate to matters that may be the subject of inquiry pursuant to MCR 2.302(B), the trial court did not abuse its discretion in ordering the plaintiffs to answer.

Affirmed in part, reversed in part, and remanded.

1. LIBEL AND SLANDER — DRAWINGS IMPUTING FEMALE'S LACK OF CHASTITY — ACTIONS.

A drawing that imputes a lack of chastity to a female is actionable per se, irrespective of special harm (MCL 600.2911[1]; MSA 27A.2911[1]).

2. CIVIL RIGHTS — SEXUAL HARASSMENT — CIVIL RIGHTS ACT.

In order for a claim of sexual harassment in violation of the Civil Rights Act to be stated properly, the plaintiff must allege that the harassment was based on the plaintiff's gender (MCL 37.2101 *et seq.*; MSA 3.548[101] *et seq.*).

3. TORTS — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

Liability for the intentional infliction of emotional distress may be found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community.

4. TORTS — EMPLOYER'S LIABILITY FOR EMPLOYEE'S TORTS.

An employer is liable for the tortious acts of its employee only when the acts are committed within the scope of the employee's employment.

5. PRETRIAL PROCEDURE — DEPOSITIONS — OBJECTIONS BASED ON RELEVANCY.

Where a relevancy objection is made at a deposition, the proper procedure is to note the objection on the record and then take the deponent's answer subject to the objection (MCR 2.306[C][4]).

6. PRETRIAL PROCEDURE — DISCOVERY — LAY WITNESSES — EXPERT WITNESSES.

The scope of discovery with regard to lay witnesses is limited only by MCR 2.302(B)(1); the provisions of MCR 2.302(B)(4) relating to the discovery of facts known and opinions held by expert witnesses apply to expert witnesses only.

*Sumpter, Perry & McDonald, P.C.* (by *Thomas E. McDonald*), for the plaintiffs.

*Bodman, Longley & Dahling* (by *Kathleen A. Lieder*), for the defendants.

Before: HOOD, P.J., and SAWYER and JANSEN, JJ.

JANSEN, J. Plaintiffs, Sherry and Russell Linebaugh, appeal as of right from the Cheboygan Circuit Court's March 5, 1990, order granting defendants' motion for summary disposition with regard to plaintiffs' claims of defamation, sexual

harassment, and intentional or reckless infliction of emotional distress. This case emanates from the circulation of a cartoon in Sherry Linebaugh's workplace. The cartoon, which can be interpreted as depicting Sherry Linebaugh (hereafter plaintiff) and a male co-worker in a sexually compromising position, was drawn by defendant Rick Herring. We affirm in part and reverse in part the order of the trial court.

Plaintiffs first contend that the trial court erred in dismissing their defamation claim because the cartoon, allegedly depicting plaintiff and a male co-worker engaged in a sexual act, is actionable by its very nature. The trial court found the cartoon to be "ambivalent as to who is doing what to whom." We are of the opinion that summary disposition was improperly granted to Herring on this claim. *Dep't of Social Services v Aetna Casualty & Surety Co,* 177 Mich App 440, 444-445; 443 NW2d 420 (1989).

The elements of a cause of action for libel are: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by publication. *Locricchio v Evening News Ass'n,* 438 Mich 84, 115-116; 476 NW2d 112 (1991); *Rouch v Enquirer & News of Battle Creek (After Remand),* 440 Mich 238, 251; 487 NW2d 205 (1992); *Royal Palace Homes, Inc v Channel 7 of Detroit, Inc,* 197 Mich App 48; 495 NW2d 392 (1992). A drawing that imputes a lack of chastity to a female is actionable per se, irrespective of special harm. MCL 600.2911(1); MSA 27A.2911(1). Prior established case law suggests that lack of chastity may be imputed by reference to acts other than

promiscuous sexual intercourse, such as the sexual activity allegedly depicted by the cartoon at issue. Cf. *Maciejewski v Rychart,* 192 Mich 530; 159 NW 479 (1916); *Loranger v Loranger,* 115 Mich 681; 74 NW 228 (1898).

We first note that in ruling on defendants' motion, the trial court did not state whether it was considering the cartoon as captioned or uncaptioned. Herring admittedly drew the cartoon, but he strongly denies adding the caption to the cartoon. John Dunn, the union bargaining chairman, testified that there was some debate regarding who added the caption to the cartoon. Dunn also testified, however, that most of the employees he spoke with stated that the writing was on the cartoon when first posted. Although this creates a factual question precluding summary disposition, this does not constitute the sole basis for our resolution of this issue. We are of the opinion that a reasonable trier of fact could conclude that the cartoon, whether captioned or uncaptioned, imputes a want of chastity to Sherry Linebaugh.

The captioned cartoon is not ambiguous with regard to either its sexual connotations or the identity of the participants depicted therein. Both plaintiff and her co-worker, Carl Schaefer, are identified by name, and defendants do not assert that some "Sherry" other than plaintiff was the clear and intended victim of the cartoon. Because the cartoon could be interpreted as depicting plaintiff engaged in a sexual act with a male other than her husband, a reasonable trier of fact could conclude that the cartoon imputes to plaintiff a lack of chastity, which is actionable irrespective of special harm.

We are also of the opinion that a rational trier of fact could conclude that the cartoon, if construed uncaptioned, is defamatory and actionable

per se. If uncaptioned, the viewer of the cartoon would have to possess knowledge of extrinsic facts in order to trigger its defamatory effect. As stated in Prosser, Torts (4th ed), § 111, p 749:

> He [the plaintiff] need not, of course, be named, and the reference may be an indirect one, with the identification depending upon circumstances known to the hearers, and it is not necessary that every listener understand it, so long as there are some who reasonably do; but the understanding that the plaintiff is meant must be a reasonable one, and if it arises from extrinsic facts, it must be shown that these were known to those who heard.

The testimony indicates that in referring to plaintiff, Carl Schaefer told Paul Freeman "to leave his mashed potatoes and gravy alone." Thereafter, Herring drew the cartoon in question and Robert Shorkey posted the cartoon on a bulletin board in the workplace. According to Herring's own testimony, most of the people on the afternoon shift had knowledge of the "mashed potatoes" story. Herring testified that if other employees had heard the story and saw the cartoon, they could possibly relate the cartoon to the story. One viewer of the cartoon testified that the male figure depicted in the drawing resembled Schaefer with sufficient detail to lead her to believe that it was Schaefer. Also, the buttocks depicted in the cartoon are wearing Lee brand jeans, and plaintiff testified that she customarily wore jeans to work.

In light of the above considerations, we hold that the trial court erred in granting summary disposition to Herring with regard to plaintiffs' defamation claim. However, we reach a different result with regard to the corporate defendant, Sheraton Michigan Corporation. See *Poledna v Bendix Aviation Corp,* 360 Mich 129, 139-140; 103

NW2d 789 (1960); *Grist v Upjohn Co,* 368 Mich 578, 583; 118 NW2d 985 (1962). We cannot say that the cartoon was drawn by Herring while in the discharge of his duties as an agent for Sheraton, or that it was done in relation to a matter about which his duties as an agent required him to act. Therefore, we affirm the trial court's grant of summary disposition to the corporate defendant on plaintiffs' defamation claim.

Plaintiffs next contend that the trial court erred in dismissing their sexual harassment claim brought pursuant to the Civil Rights Act, MCL 37.2101 *et seq.;* MSA 3.548(101) *et seq.* We disagree with plaintiffs.

Plaintiffs' sexual harassment claim is based upon a hostile work environment theory, MCL 37.2103(h)(iii); MSA 3.548(103)(h)(iii). This Court, in *Langlois v McDonald's Restaurants of Michigan, Inc,* 149 Mich App 309; 385 NW2d 778 (1986), recognized as one element of a sexual harassment claim the necessity that the harassment complained of be based on the complainant's gender. *Id.,* p 313. In the present case, plaintiff has not demonstrated that the cartoon was gender-oriented or that the harassment complained of was based on her gender. The cartoon allegedly depicts both plaintiff and a male co-worker as engaging in a sexual act and, therefore, is gender neutral. The cartoon could be considered equally offensive to both male and female employees.

Additionally, upon receiving plaintiff's complaint of harassment, an investigation was conducted and Herring and Robert Shorkey were given written warnings. Therefore, we find that the trial court properly granted summary disposition for defendants with regard to plaintiffs' sexual harassment claim. *Downer v Detroit Receiving Hosp,* 191 Mich App 232, 234; 477 NW2d 146 (1991).

Plaintiffs next argue that the trial court erred in dismissing their claim of intentional or reckless infliction of emotional distress. Plaintiffs assert that there are few things more outrageous than a cartoon depicting a woman engaged in a sexual act with a male other than her husband. We agree with plaintiffs.

The elements of the tort of intentional infliction of emotional distress are: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. *Roberts v Auto-Owners Ins Co,* 422 Mich 594, 602; 374 NW2d 905 (1985); *Runions v Auto-Owners Ins Co,* 197 Mich App 105; 495 NW2d 166 (1992). Liability for the intentional infliction of emotional distress has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. *Roberts,* p 603; *Meek v Michigan Bell Telephone Co,* 193 Mich App 340, 346; 483 NW2d 407 (1992). However, liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. *Roberts,* p 603.

We are of the opinion that the trial court erred in granting summary disposition to Herring with regard to this claim. Once having viewed the cartoon at issue, a reasonable factfinder could conclude that the depiction of plaintiff engaged in a sexual act with a co-worker constitutes conduct so outrageous in character and so extreme in degree that it goes beyond all bounds of common decency in a civilized society. We note that a number of plaintiff's co-workers testified that the cartoon was offensive. Furthermore, Herring's creation of the cartoon and his delivery of it to Shorkey may well constitute reckless behavior.

The question whether Herring's conduct was sufficiently outrageous and extreme so as to render him liable for intentional infliction of emotional distress is a matter for determination by the trier of fact.

With regard to the corporate defendant, Sheraton, we reach a different conclusion. Even if Herring were found to have intentionally inflicted emotional distress upon plaintiff, Sheraton would not be vicariously liable. An employer is liable only for the acts of its employee committed within the scope of employment. *McCalla v Ellis,* 129 Mich App 452, 460-461; 341 NW2d 525 (1983). Summary disposition was properly granted to the corporate defendant with regard to this claim.

Plaintiffs also assert that the trial court erred in refusing to compel Herring to answer a question put to him during the course of his deposition. Defense counsel instructed Herring not to answer a question asked by plaintiffs' attorney during the deposition. Defense counsel objected to the question on the basis of relevancy. The trial court subsequently denied plaintiffs' motion to compel discovery.

A motion to compel discovery is a matter within the trial court's discretion, and the court's decision to grant or deny a discovery motion will be reversed only if there has been an abuse of that discretion. *Williams v Logan,* 184 Mich App 472, 476; 459 NW2d 62 (1990). Evidence objected to at a deposition, on grounds other than privilege, shall be taken subject to the objection. MCR 2.306(C)(4). When a relevancy objection is made at a deposition, the proper procedure is to note the objection on the record, and then take the deponent's answer subject to the objection. In this case, the trial court abused its discretion in denying plaintiffs' motion to compel Herring to answer the question.

Lastly, plaintiffs contend that the trial court erred in ordering them to answer defendants' interrogatories regarding the subject matter and substance of their lay witnesses' expected testimony at trial. Plaintiffs argue that the court rules only allow inquiry into a party's expectations about the testimony of expert witnesses, and that an inquiry into the expected testimony of lay witnesses exceeds the bounds of discovery permitted under the court rules. Plaintiffs further argue that such an inquiry would result in revealing plaintiffs' attorney's mental theories, impressions, and work product. We disagree with plaintiffs.

We first point out that plaintiffs' second amended witness list named fifty-eight potential witnesses, including an unspecified number of "nurses" and "therapy personnel." Plaintiffs argued that it was necessary to list all the witnesses or else they would "lose them." Defendants argued that the magnitude of the list was inappropriate and amounted to an abusive practice. Defendants further argued that if the subject matter and substance of the testimony of the witnesses listed by plaintiffs was made known to them, they could better determine which witnesses should be deposed. The trial court found that "if you have a witness, you have to disclose whether you're going to use him—for what purpose, and what you believe he will testify to."

Generally, parties may obtain discovery regarding any matter not privileged that is relevant to the subject matter involved in the pending action. MCR 2.302(B)(1). It is true, as plaintiffs assert, that the court rules do permit discovery of facts known and opinions held by expert witnesses, but only as provided in the court rule. MCR 2.302(B)(4). We find instructive the author's comment to MCR 2.302, 2 Martin, Dean & Webster, Michigan Court

Rules Practice, Rule 2.302, comment 8(g), p 182, which states:

> The provisions of subrule 2.302(B)(4) restrict discovery of facts known and opinions held by experts acquired or developed in anticipation of litigation or in preparation for trial to only the situations and methods provided for by that subrule. *As to this one particular class of persons, experts, the rule is a direct restriction on the scope of discovery permitted by 2.302(B)(1)*. . . .
>
> Conversely, however, if the expert witness acquired his or her information not in anticipation of litigation or for trial, but rather as a witness to the incident or occurrence in question, or as a result or consequence of his or her normal business activities and duties, *no restrictions are placed upon discovery relating to these persons at all. They are treated just as if they were any other potential witness, and the scope of discovery as to them is limited only by the provisions of rule 2.302(B)(1)*. [Emphasis added.]

We are of the opinion that the quoted comment adequately addresses the issue raised by plaintiffs. By reading the comment, it becomes apparent that the provisions of MCR 2.302(B)(4) are specific and refer to a particular class of persons, experts. We view the provisions of MCR 2.302(B)(4) as a direct restriction on the general scope of discovery permitted by MCR 2.302(B)(1). No similar restrictions are placed upon discovery relating to lay witnesses, and we will not read into the court rules that which is not expressly provided for or restricted by a specific rule. The scope of discovery, with regard to lay witnesses, is limited only by the provisions of MCR 2.302(B)(1).

We believe that this holding is consistent with Michigan's historical commitment to far-reaching, open, and effective discovery practice. *Eyde v*

*Eyde,* 172 Mich App 49, 54; 431 NW2d 459 (1988). Discovery rules are to be construed in order to further the ends of justice. *Id.* The modern tendency is to broaden the scope of discovery when necessary to facilitate preparation, to guard against surprise, and to expedite justice. *Id.*

We conclude that the scope of discovery with regard to a party's lay witnesses is limited only by the provisions of MCR 2.302(B)(1). Plaintiffs have not claimed privilege, and it can hardly be argued that the subject matter and substance of witnesses' testimony are not relevant to the subject matter of a pending action. Because interrogatories may relate to matters that can be inquired into under MCR 2.302(B), MCR 2.309(D)(1), the trial court did not abuse its discretion by ordering plaintiffs to answer defendants' interrogatories regarding the subject matter and substance of plaintiffs' lay witnesses' expected testimony.

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction.