# STATE OF MICHIGAN

# COURT OF APPEALS

JOHN SYKES,

        Plaintiff-Appellant,

v

PHOENIX PROMOTIONS, LLC, d/b/a
BLACKBERRY BAR & GRILL, and CORTEZ
SMITH,

        Defendants-Appellees.

UNPUBLISHED
October 25, 2018

No. 338476
Wayne Circuit Court
LC No. 16-006474-NO

Before: MURRAY, C.J., and BORRELLO and RONAYNE KRAUSE, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting summary disposition to defendants, Phoenix Promotions, LLC, doing business as Blackberry Bar & Grill (the bar), and Cortez Smith[1] (collectively "defendants"), in this third-party negligence action. We reverse regarding plaintiff's negligence claim only, and remand for further proceedings.

## I. BACKGROUND

This case arises from a shooting that took place at the Blackberry Bar & Grill on July 23, 2011. Upon entering the bar, Plaintiff testified that he was promptly patted down by an alleged bouncer. Although the bar was capacious, an unknown man in the bar bumped into plaintiff several times. Plaintiff testified that he did not pay attention to the unknown man after the first time, but after the second or third, plaintiff confronted the man, asking why he continued to bump into him. Upon asking, the unknown man proceeded to pull up his shirt and display a gun to plaintiff. The bar manager, Tracey Wilcox, testified that plaintiff was the aggressor of the

---

[1] Plaintiff asserted that Smith was the security guard or bouncer working at the bar on the night in question. However, Tracey Wilcox, the bar manager, testified that the bar had no bouncers, and Smith was a regular patron of the bar. Although Smith's status as an employee was not confirmed in the lower court, he was not dismissed from the action, and remains a party subject to this appeal.

altercation, and he "mushed" the unknown man in the face, meaning, an "[o]pen hand push in the face."

Plaintiff testified that bar staff members were informed that the unknown man had a gun, but no apparent action was taken and the unknown man remained inside the bar for 30 minutes. Plaintiff did not leave the bar for another 40 minutes after the unknown man left, and upon stepping outside, plaintiff observed the bouncer sitting outside the bar. One of plaintiff's associates said that the bouncer was talking to the unknown man. After plaintiff took two steps further, he was shot several times by gunfire coming from behind him on the sidewalk. Defendants filed a motion for summary disposition, asserting several arguments, but the court only addressed the duty element of plaintiff's negligence claim. The trial court granted summary disposition in favor of defendants on the grounds that they owed no duty to plaintiff to protect him from foreseeable criminal acts of third parties.

On appeal, plaintiff argues that the trial court erred in granting defendants summary disposition regarding his negligence, premises liability, intentional infliction of emotional distress (IIED), negligent infliction of emotional distress (NIED), and spoliation of evidence sanctions claims. We agree that defendants owed plaintiff a duty, and we remand for further proceedings on the remaining elements of plaintiff's negligence claim.

## II. STANDARD OF REVIEW

Defendants moved for summary disposition pursuant to MCR 2.116(C)(8) and (C)(10), but defense counsel clarified at the hearing that MCR 2.116(C)(8) only pertained to defendants' Dramshop Act argument. The court granted defendants' motion pursuant to MCR 2.116(C)(10), concluding that there was "no genuine issue of any material fact" that there was no imminent risk of harm, and therefore, no duty on defendants. Therefore, we treat this review as pursuant to MCR 2.116(C)(10).

This Court reviews a motion for summary disposition de novo. *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 115; 839 NW2d 223 (2013). A motion for summary disposition under MCR 2.116(C)(10) challenges the factual sufficiency of a plaintiff's claim. *Gorman*, 302 Mich App at 115. The trial court considers the evidence in the light most favorable to the nonmoving party. *Id*. Summary disposition is proper under MCR 2.116(C)(10) if " 'there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law.' " *Id*. at 116 (citation omitted). There is a genuine issue of material fact " 'when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ.' " *Id*. (citation omitted).

## III. NEGLIGENCE

Plaintiff argues on appeal that defendants had a duty to use reasonable care to protect plaintiff from the unknown man's foreseeable criminal act, given that the prior altercation inside the bar where the unknown man displayed a gun to plaintiff made the shooting an imminent and foreseeable risk. We agree.

To establish a prima facie case of negligence, the plaintiff must establish that (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) the breach was a proximate cause of the plaintiff's damages, and (4) the plaintiff suffered damages. *Latham v Nat'l Car Rental Sys, Inc*, 239 Mich App 330, 340; 608 NW2d 66 (2000). The threshold issue is whether the defendant owed the plaintiff a legal duty. *Johnson v Bobbie's Party Store*, 189 Mich App 652, 659; 473 NW2d 796 (1991). The duty element is a question of law for the court to decide. *Roberts v Salmi*, 308 Mich App 605, 613; 866 NW2d 460 (2014). Once a duty is established, breach of that duty is a question of fact. *Boumelhem v Bic Corp*, 211 Mich App 175, 181; 535 NW2d 574 (1995).

Whether a legal duty exists depends upon whether the relationship between the actor and the plaintiff gave rise to a legal obligation on the part of the actor for the benefit of the injured person. *Hill v Sears, Roebuck and Co*, 492 Mich 651, 661; 822 NW2d 190 (2012). To determine whether a duty exists, the court assesses competing policy considerations, and determines whether the social benefits of imposing a duty would outweigh the social costs of imposing the duty. *In re Certified Question from the Fourteenth Dist Court of Appeals of Texas*, 479 Mich 498, 505; 740 NW2d 206 (2007). Only when the law recognizes a duty to act with due care arising from the relationship between the parties is the defendant subject to liability for negligent conduct. *Id*. at 506. Factors to consider when determining whether a legal duty exists include the relationship of the parties, foreseeability of harm, any burden on the defendant, and the nature of the risk. *Hill*, 492 Mich at 661. The most important factor is the relationship of the parties, but foreseeability of harm is also essential. *Id*.

Here, plaintiff asserted that he was an invitee on defendants' premises, and his invitee status was not disputed by defendants. Generally, merchants do not have a duty to protect invitees from unreasonable risks that are not foreseeable. *MacDonald v PKT, Inc*, 464 Mich 322, 332; 628 NW2d 33 (2001). A duty only arises on behalf of invitees that are easily identifiable as being foreseeably endangered. *Id*. Any measures taken by merchants must be reasonable. *Id*. Moreover, merchants generally do not have an obligation to anticipate and prevent criminal acts against invitees. *Id*. at 334. Criminal acts are not foreseeable unless they "arise from a situation occurring on the premises under circumstances that would cause a person to recognize a risk of imminent and foreseeable harm to an identifiable invitee." *Id*. Our Supreme Court provided the following standard regarding a premises owner's duty under such circumstances:

> A premises owner's duty is limited to responding reasonably to situations occurring on the premises because, as a matter of public policy, we should not expect invitors to assume that others will disobey the law. A merchant can assume that patrons will obey the criminal law . . . This assumption should continue until a specific situation occurs on the premises that would cause a reasonable person to recognize a risk of imminent harm to an identifiable invitee. It is only a present situation on the premises, not any past incidents, that creates a duty to respond. [*Id*. at 335 (citations omitted).]

When the duty is triggered, a premises owner is not required to do anything more than reasonably expedite police involvement. *Id*. at 338.

The evidence in this case established that plaintiff and the unknown man engaged in an altercation inside the bar before the shooting. Wilcox testified that plaintiff was the aggressor in the situation, and plaintiff "mushed" the unknown man in the face. Plaintiff testified that the unknown man kept bumping into him, and when plaintiff said something, the unknown man brandished a gun to plaintiff. Wilcox testified that she was the working manager at the bar that night, and there is no mention in her deposition testimony that she was told that the unknown man had a gun. Wilcox also said that only she and two other employees were working that night, and there was no bouncer. Critically, notwithstanding defendant's incorrect belief that the manager's name was Denise, he testified that a bar staff member was informed that the unknown man had a gun. The evidence is reviewed in the light most favorable to the nonmoving party. *Gorman*, 302 Mich App at 115.

The trial court determined that the altercation between plaintiff and defendant did not pose a risk of imminent harm because there was a period of time in between the display of the gun by the unknown man and the shooting. In the trial court's opinion, this period of time made any risk of harm no longer imminent. Seemingly, the trial court determined that any negligent act of defendants occurred at the time of the shooting, rather than at the time of the altercation. We disagree.

When the altercation occurred, and the unknown man displayed his gun, there was, at that moment, a risk of imminent harm. *MacDonald*, 464 Mich at 335. There was a risk that the unknown man could cause harm by using the gun that he had on his person. Bar staff was informed that the unknown man had a gun. Therefore, defendants' duty to protect plaintiff was triggered at that point, and defendants should have called the police. *Id*. at 338. We think it obvious that a potentially aggressive individual carrying a gun in a bar is not a threat that ends when the gun is covered up.[2] Wilcox testified that she did not call the police until after plaintiff exited the bar, and she heard shots fired. Because defendants failed to call the police after the altercation, the unknown man remained in the bar for a period of time, and then shot at plaintiff when plaintiff exited. Thus, the trial court erred when it determined that the duty to provide reasonable care to protect invitees from foreseeable criminal acts of third parties did not extend to defendants. The altercation and display of a gun, of which defendants were aware, posed a risk of imminent harm to plaintiff. *Id*. at 335.

To the extent plaintiff alleged that defendants had an obligation to ensure that any bouncers they engaged did not act negligently, our Supreme Court has made it clear that a merchant's duty of reasonable care does not include providing security guards to deter criminal acts of third parties. *Mouzon v Achievable Visions*, 308 Mich App 415, 418; 864 NW2d 606 (2014). When a merchant voluntarily provides security, the merchant is not liable for the negligent actions of the security guards. *Id*. Plaintiff alleged in his complaint that defendants breached duties including improper delegation of duties, improper supervision of the bouncer, improper training of staff, failure to maintain adequate staff, and the failure to create rules for

---

[2] We note also that we completely agree with our concurring colleague, and we incorporate his separate opinion by reference.

bouncers. Wilcox testified that the bar never employed bouncers. However, plaintiff testified that there was a bouncer present that evening, as evidenced by the patting-down plaintiff received upon entry into the bar. Even considering this evidence in the light most favorable to plaintiff, *Gorman*, 302 Mich App at 115, assuming that there was a bouncer present, defendants had no duty to provide bouncers, and they are not liable for any negligence of the alleged bouncers. *Mouzon*, 308 Mich App at 418.

Nevertheless, as discussed, defendants had a duty to call the police when the unknown man displayed a gun to plaintiff and bar staff members were made aware of the gun, and they breached that duty because the police were not called until the shooting occurred. *MacDonald*, 464 Mich at 335, 338. Plaintiff further argues that the shooting was foreseeable, thus establishing proximate cause. We agree.

The determination of duty and proximate cause are closely related because the issue of whether there is a requisite relationship giving rise to a legal duty, and the issue of whether the cause is so significant to be considered a proximate cause, both depend on foreseeability. *Graves v Warner Bros*, 253 Mich App 486, 505-506; 656 NW2d 195 (2002). Proximate cause " 'involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences.' " *Ray v Swager*, 501 Mich 52, 63; 903 NW2d 366 (2017) (citation omitted). Proximate cause is established when the harm suffered by the plaintiff " 'was the general kind of harm the defendant negligently risked.' " *Ray*, 501 Mich at 64. Plaintiff was, presumably, shot by the unknown man when he exited the bar. We again think it obvious that getting shot was precisely the kind of harm that defendants negligently risked by failing to call the police after the altercation and allowing an armed and possibly aggressive person to remain in the bar. *Id*.

The fact that the shooting did not occur for another 70 minutes, and that the altercation between plaintiff and the unknown man was seemingly over by that time, did not make it any less foreseeable. Plaintiff and the unknown man were peacefully separated while they were both inside the bar. However, it was reasonably foreseeable that the unknown man could use the gun that he displayed to shoot plaintiff when he encountered plaintiff again outside the bar. We are unable to conclude that any intervening cause broke the chain of causality. See *Auto Owners Ins Co v Seils*, 310 Mich App 132, 157; 871 NW2d 530 (2015).

We decline to consider any other elements of plaintiff's negligence claim. The trial court erred in finding that defendants owed no duty to plaintiff arising out of their alleged awareness that the unknown man had a gun. The kind of harm plaintiff suffered is precisely the kind of harm threatened, and the threat did not evaporate merely because the unknown man covered the gun back up and seemingly ended the confrontation. We therefore reverse the trial court's grant of summary disposition in favor of defendants as to plaintiff's negligence claim on that basis. In all other respects, we leave to the trial court's discretion how to address the matter on remand.

IV. ALTERNATE THEORIES

Plaintiff is not entitled to reversal of the order granting defendants' motion for summary disposition based on any of his alternative theories of liability.

## A. DRAMSHOP ACT

On appeal, plaintiff preemptively argues that the Dramshop Act is irrelevant to the issues presented before the court. We agree. Both parties agreed that the plaintiff did not allege any dramshop cause of action, nor were there any dramshop claims brought before the trial court. There are no arguments alleging that plaintiff's injuries arose from defendants furnishing of alcohol to the unknown man. Additionally, there is no evidence on the record to suggest the unknown man was intoxicated or that intoxication was the cause of the shooting.

## B. PREMISES LIABILITY

Plaintiff argues on appeal that his premises liability claim is "still viable," and repeats his arguments that the elements of a negligence claim are met because the unknown man committed a crime by having a gun in the bar, and defendants' failure to call the police after the initial altercation culminated in plaintiff getting shot. We disagree.

Plaintiff included a claim labeled "premises liability" in his complaint, alleging that the bar, as a landlord, had a duty to warn plaintiff of hidden or unreasonable risks or dangers, and allowed a dangerous condition to be created. " 'Michigan law distinguishes between claims arising from ordinary negligence and claims premised on a condition of the land.' " *Lymon v Freedland*, 314 Mich App 746, 756; 887 NW2d 456 (2016). Claims of ordinary negligence are based on the premise that an individual has a duty to follow an applicable standard of care when conducting an activity. *Lymon*, 314 Mich App at 756. Claims of premises liability are based on a defendant's duty as an owner, possessor, or occupier of land. *Id*. An action sounds in premises liability rather than ordinary negligence when an injury occurs from a condition of the land, rather than an activity or conduct that created the condition on the land. *Id*.

"[T]he gravamen of an action is determined by reading the complaint as a whole, and by looking beyond mere procedural labels to determine the exact nature of the claim." *Adams v Adams (On Reconsideration)*, 276 Mich App 704, 710-711; 742 NW2d 399 (2007). Although labeled as a claim of "premises liability," plaintiff never specifies what the alleged "dangerous condition" is on defendants' land. It is seemingly the presence of the unknown man with a gun, but this cannot conceivably be considered a "condition of the land" required for a claim sounding in premises liability. *Lymon*, 314 Mich App at 756.

## C. IIED AND NIED

Plaintiff claims that his IIED and NIED claims are "still viable" in a heading in his brief on appeal. Plaintiff contends that defendants' failure to call the police after the unknown man "physically accosted" plaintiff and "threatened him with a gun" was reckless and outrageous conduct that caused plaintiff severe emotional distress. Plaintiff only addresses the elements for IIED on appeal, and does not specifically address NIED at all.

To establish IIED, a plaintiff must show "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Graham v Ford*, 237 Mich App 670, 674; 604 NW2d 713 (1999). IIED requires more than "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities," even if the actor "acted with an

intent that is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." *Id*. While plaintiff cites prima facie elements of this tort, plaintiff does not go far enough as to establish intent on behalf of defendants. To be actionable, the conduct must be " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Roberts v Auto-Owners Ins Co*, 422 Mich 594, 608; 374 NW2d 905 (1985). Whether particular conduct can be considered sufficiently extreme and outrageous is initially a question for the courts, and if so, it is up to the trier of fact to determine whether the conduct was sufficiently extreme and outrageous. *Doe v Mills*, 212 Mich App 73, 92; 536 NW2d 824 (1995).

Examples of intentional infliction of emotional distress are the act of secretly videotaping sexual encounters, *Lewis v LeGrow*, 258 Mich App 175, 197-198; 670 NW2d 675 (2003), and the act of drawing a cartoon of an individual engaged in a sexual act with a coworker, *Linebaugh v Sheraton Mich Corp*, 198 Mich App 335, 343; 497 NW2d 585 (1993). The actions of defendants, namely, the failure to eject the unknown man from the bar or call the police after the initial altercation, do not rise to the level of extreme or outrageous conduct required. *Roberts*, 422 Mich at 608. After the altercation between plaintiff and the unknown man, the two were separated within the bar, and both peacefully remained in the bar together for another 30 minutes until the unknown man left. Defendants' failure to eject the unknown man right after the confrontation or immediately call the police, although possibly negligent, was neither extreme nor outrageous. *Id*.

A plaintiff may establish the second element of an IIED claim by a showing that the defendant specifically intended to cause the plaintiff emotional harm, or that a defendant's conduct was so reckless that " 'any reasonable person would know emotional distress would result.' " *Haverbush v Powelson*, 217 Mich App 228, 236-237; 551 NW2d 206 (1996). Plaintiff has made no allegation that defendants intended to cause him emotional harm. Rather, he claims that their continued fraternization with the unknown man after the altercation was reckless. We disagree. Defendants did not act recklessly when they failed to eject the unknown man from the bar or immediately call the police after the altercation when there was no indication that the altercation was ongoing. Thus, plaintiff cannot establish a claim for IIED, and no plain error occurred when the court dismissed this claim.

In addition to not being addressed in the lower court, plaintiff failed to properly brief his NIED claim in his brief on appeal, constituting waiver. See *State Treasurer v Sprague*, 284 Mich App 235, 243; 772 NW2d 452 (2009) ("Failure to brief a question on appeal is tantamount to abandoning it."). "A plaintiff may recover for negligent infliction of emotional distress where (1) the injury threatened or inflicted *on the third person* is a serious one, of a nature to cause mental disturbance to the plaintiff, (2) the shock results in actual physical harm, (3) the plaintiff is a member of the third person's immediate family, and (4) the plaintiff is present at the time of the accident or suffers shock 'fairly contemporaneous' with the accident." *Taylor v Kurapati*, 236 Mich App 315, 360; 600 NW2d 670 (1999) (emphasis added). Plaintiff's claim for NIED, on its face, fails because, as defendants assert, it is a "bystander theory." NIED covers liability when an injury occurs to a third person, and the plaintiff suffers mental disturbance or shock. *Id*. Here, plaintiff personally sustained injuries when he was shot. Therefore, plaintiff's claim for

NIED, even if it had been properly presented, necessarily lacks merit, and does not entitle plaintiff to reversal of the order granting defendants' motion for summary disposition.

## D. SPOLIATION

On appeal, plaintiff argues that sanctions should be imposed upon defendants because Wilcox did not maintain the bar's surveillance video footage, even though she thought that the police would return to obtain it. Plaintiff asserted this argument for the first time in his answer to defendants' motion for summary disposition. At the hearing, plaintiff's counsel argued that the surveillance footage could have identified the shooter, and corroborated what occurred inside the bar during the altercation between plaintiff and the unknown man. The court's response was:

> But what's that relevant to? I'm only deciding whether or not the bar had a duty predicated upon your client's disclosure [that] a patron has a gun, whether that's – and there was an altercation with the patron followed by the allegation there was disclosure[,] that the opposite instant – party in your – to your client, the alleged instigator, was armed.

> That's – does that rise to the level of – under the law that they have to take action to prevent harm through the calling of the police. Isn't that what I'm deciding?

Although plaintiff briefed this issue in his answer to defendants' motion for summary disposition, defendants did not file a reply addressing it. Thus, the court asserted that it only had "half of the issue," and the trial judge said, "Let's stick right now with the summary."

"[S]poliation may occur by the failure to preserve crucial evidence, even though the evidence was not technically lost or destroyed." *Bloemendaal v Town & Country Sports Ctr, Inc*, 255 Mich App 207, 212; 659 NW2d 684 (2003). Even when an action is not yet commenced, but there is potential for litigation, the litigant has the duty to preserve evidence that it knows, or reasonably should know, is relevant to the possible action. *Id*. When material evidence is lost or destroyed, intentionally or unintentionally, and the opposing party is unfairly prejudiced due to the inability to challenge or respond to the evidence, the trial court may sanction the culpable party. *Brenner v Kolk*, 226 Mich App 149, 160; 573 NW2d 65 (1997). Generally, when a party deliberately destroys evidence or fails to produce it, courts presume that such evidence would disfavor the party who destroyed or failed to produce it. *Hamann v Ridge Tool Co*, 213 Mich App 252, 255; 539 NW2d 753 (1995). However, when lost evidence is immaterial, sanctioning the culpable party is inappropriate. *Ellsworth v Hotel Corp of America*, 236 Mich App 185, 193; 600 NW2d 129 (1999).

Although the surveillance footage may have identified the shooter and provided corroboration regarding whether plaintiff or the unknown man instigated their initial altercation, we agree with the trial court's assertion that it is irrelevant to whether defendants had a duty to provide reasonable care to protect plaintiff from foreseeable criminal acts of third parties. There was deposition testimony from both plaintiff and Wilcox regarding the events that evening. Wilcox watched the surveillance footage with the police after they arrived at the scene. She only saw a commotion outside the bar and people running. She recognized the unknown man in the

bar that night from his previous visits, but did not know him personally. Although she stated that there were cameras inside the bar, she did not mention whether she watched the footage of the indoor cameras with the police. There was no indication that the indoor footage included the altercation between defendant and the unknown man, or whether it included any indication that bar staff were informed that the unknown man had a gun. Plaintiff testified bar staff were informed. The absent surveillance footage is unlikely to provide further information regarding the duty of defendants. Therefore, plaintiff cannot demonstrate that a plain error affecting his substantial rights occurred by the trial court's failure to sanction defendants for spoliation of the surveillance footage evidence.

## V. CONCLUSION

We reverse and remand for further proceedings consistent with this opinion. We do not retain jurisdiction. We award no costs, no party having prevailed in full. MCR 7.219(A).

/s/ Stephen L. Borrello
/s/ Amy Ronayne Krause