*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KATHLEEN MICHELI,

Plaintiff-Appellee,

v

MICHIGAN AUTOMOBILE INSURANCE
PLACEMENT FACILITY, also known as
MICHIGAN ASSIGNED CLAIMS PLAN,

Defendant,

and

CITIZENS INSURANCE COMPANY,

Defendant-Appellee,

and

MARY KNEISER, M.D., and ABILITY
ASSESSMENTS, PC,

Nonparty-Appellants.

FOR PUBLICATION
February 10, 2022
9:00 a.m.

No. 356559
Macomb Circuit Court
LC No. 2019-005005-NF

Before: GLEICHER, C.J., and BORRELLO and RONAYNE KRAUSE, JJ.

RONAYNE KRAUSE, J.

Nonparty-appellants, Ability Assessments, P.C. (Ability Assessments) and Dr. Mary Kneiser, M.D., appeal by leave granted the order denying defendant, Citizens Insurance

-1-

Company's (Citizens), motion to quash plaintiff's subpoena and for protective order.[1]  On appeal, nonparty-appellants[2] argue the trial court abused its discretion by denying Citizens's motion to quash plaintiff's subpoena.  We vacate the trial court's order and remand for further proceedings consistent with this opinion.

## I.  FACTS

This case arises from a December 2018 car accident.  In her complaint, plaintiff alleged she was hit by a car insured by Citizens.  After this car accident, plaintiff sued Citizens for personal injury protection (PIP) benefits.  Citizens retained Dr. Kneiser as an expert witness to conduct an insurance[3] medical examination (IME) of plaintiff.  On November 10, 2020, plaintiff's counsel sent a subpoena to Dr. Kneiser's office.  The subpoena was directed to Ability Assessments, of which Dr. Kneiser is the sole owner, and which employs or contracts no other physicians or medical providers.  The subpoena asked Ability Assessments to produce the following:

a. The number of independent medical examinations performed by Mary K. Kneiser, MD[,] at the Ability Assessments, P.C. offices in the years 2017, 2018, 2019, and 2020;

b. The number of patient examinations conducted by Mary K. Kneiser, MD at the Ability Assessments, P.C. offices in the years 2017, 2018, 2019, and 2020;

c. Copies of any records of pertaining to earnings, income, or other money Mary K. Kneiser has been paid for conducting independent medical examinations, sitting for depositions pertaining to independent medical evaluations she has performed, and providing live testimony at trial pursuant to independent medical evaluations she has performed in the years of 2017, 2018, 2019, and 2020;

d. Any and all materials, including medical records and/or other tangible items provided to Ability Assessments, P.C. and/or Mary K. Kneiser, MD pertaining to the medical and/or other evaluations requested by Citizens Insurance Company of the Midwest with regard to Kathleen Micheli (DOB: 12/24/1953).  This request is for copies of any and all documents that were provided to Mary K. Kneiser, MD as it pertains to Kathleen Micheli.

---

[1] *Micheli v Mich Auto Ins Placement Facility*, unpublished order of the Court of Appeals, entered March 25, 2021 (Docket No. 356559).

[2] We use the term "nonparty-appellants" when referring collectively to Ability Assessments and Dr. Kneiser.  We note that Citizens also disrespectfully filed a brief the day before oral argument. We have nevertheless considered the arguments presented by Citizens.

[3] Although IMEs are commonly referred to as "independent medical examinations," that appellation is a euphemistic term of art.  In reality, and to a great extent central to this matter, an IME involves obtaining a second opinion from a doctor who is entirely selected and paid for by an insurance company, rendering the "independence" of the examination somewhat questionable.

e. Copies of any and all reports and drafts of reports written by Mary K. Kneiser, MD pertaining to Kathleen Micheli (DOB 12/24/1953).

Citizens moved to quash the subpoena under MCR 2.305(A)(4)(a), and for a protective order under MCR 2.302(C). Citing MCR 2.302(B)(4)(a)(iii), Citizens argued that plaintiff could not subpoena its expert witnesses without first seeking leave of the trial court by motion. Citizens further argued that records showing the number of patient examinations Dr. Kneiser had performed, and her compensation for doing so, were not relevant to the core issues of the case: whether Citizens was required to pay plaintiff PIP benefits and whether plaintiff's injuries arose from the car accident. Finally, Citizens argued the subpoena merely sought to harass, embarrass, and dissuade participation in the litigation process and would impose a burden on the expert. Although Citizens in the trial court, and nonparty-appellants on appeal, nominally challenge all five of the requests, the substance of their arguments applies only to requests (a) through (c). We therefore regard requests (d) and (e) as tacitly unchallenged both in the trial court and on appeal.

Plaintiff responded that the information sought was relevant to the credibility and potential bias of Dr. Kneiser. Plaintiff also argued that MCR 2.302(B)(4) was inapplicable, so she did not need to move the trial court to allow her to subpoena Citizens's experts. Finally, plaintiff argued that even if MCR 2.302(B)(4) did apply, the court should still require nonparty-appellants to produce the requested records because deposing Dr. Kneiser would be costly and would impose an undue hardship on plaintiff.

In a written order and opinion, the trial court denied Citizens's motion. The trial court found that MCR 2.302(B)(4) was inapplicable because plaintiff was seeking information about Dr. Kneiser from her employer—Ability Assessments—not from Dr. Kneiser herself. The trial court also found that Citizens failed to show how producing the requested records would be burdensome to Ability Assessments. Citizens then moved for reconsideration, attaching an affidavit from Dr. Kneiser, who stated that Ability Assessments does not prepare or maintain documents that separate sources of income from forensic evaluations, examinations, deposition testimony, and trial testimony from other sources of income. The trial court admitted that "employer" had been a poor word to use in describing the relationship between Dr. Kneiser and Ability Assessments, but it nevertheless denied Citizens's motion for reconsideration. Thereafter, nonparty-appellants filed an emergency application for leave to appeal. We granted nonparty-appellants' application. *Micheli v Mich Auto Ins Placement Facility*, unpublished order of the Court of Appeals, entered March 25, 2021 (Docket No. 356559).

## II. STANDARDS OF REVIEW

We review a trial court's decision to grant or deny discovery for an abuse of discretion. *Arabo v Mich Gaming Control Bd*, 310 Mich App 370, 397-398; 872 NW2d 223 (2015). We also review for an abuse of discretion a trial court's decision on a motion for protective order. *Id*. "A trial court abuses its discretion when its decision falls outside the range of principled outcomes." *Id*. "A trial court necessarily abuses its discretion when it makes an error of law." *Ronnisch Constr Group, Inc v Lofts on the Nine, LLC*, 499 Mich 544, 552; 886 NW2d 113 (2016).

The interpretation and application of statutes, rules, and legal doctrines is reviewed de novo. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008). "When ascertaining the

meaning of a court rule, the reviewing court should focus first on the plain language of the rule in question, and when the language of the rule is unambiguous, it must be enforced as written." See *Acorn Investment Co v Mich Basic Prop Ins Ass'n*, 495 Mich 338, 350; 852 NW2d 22 (2014). This Court will generally not reverse where a trial court reaches a correct result, even if the trial court did so on the basis of incorrect reasoning. *Lewis v Farmers Ins Exch*, 315 Mich App 202, 216; 888 NW2d 916 (2016).

## III. APPLICABILITY OF MCR 2.302(B)(4)

Nonparty-appellants and Citizens first argue the trial court erred by concluding that MCR 2.302(B)(4) was inapplicable to plaintiff's discovery request. We disagree.

MCR 2.302(B)(4) sets forth the rules governing pretrial discovery and "facts known and opinions held by experts." *Spine Specialists of Mich, PC v State Farm Mut Auto Ins Co*, 317 Mich App 497, 501; 894 NW2d 749 (2016), quoting MCR 2.302(B)(4). In relevant part, MCR 2.302(B)(4) states:

> (4) Trial Preparation; Experts. Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subrule (B)(1) and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:

> (a) (i) A party may through interrogatories require another party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter about which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

> (ii) A party may take the deposition of a person whom the other party expects to call as an expert witness at trial. The party taking the deposition may notice that the deposition is to be taken for the purpose of discovery only and that it shall not be admissible at trial except for the purpose of impeachment, without the necessity of obtaining a protective order as set forth in MCR 2.302(C)(7).

> (iii) On motion, the court may order further discovery by other means, subject to such restrictions as to scope and such provisions (pursuant to subrule [B][4][c]) concerning fees and expenses as the court deems appropriate. [MCR 2.302(B)(4)(a)(i) through (iii)].

Nonparty-appellants argue that MCR 2.302(B)(4) applies to any discovery request made to a nonparty expert regardless of whether the information sought is about the expert or is known to the expert. Plaintiff argues that MCR 2.302(B)(4) applies only when a party seeks "facts known or opinions held" by a nonparty expert, and plaintiff here was not seeking to discover Dr. Kneiser's opinion or facts known to Dr. Kneiser. Plaintiff also argues that MCR 2.302(B)(4) applies only when the facts known or opinions held by an expert were acquired or developed in anticipation of litigation, which the requested records here were not.

-4-

As an initial matter, nonparty-appellants argue that Dr. Kneiser and Ability Assessments are one and the same, so plaintiff's subpoena to Ability Assessments was really a subpoena to Dr. Kneiser. We find this reasoning questionable. Subject to exceptions for malpractice, principles of respecting the corporate form generally apply to professional corporations. See *Nugent v Weed*, 183 Mich App 791, 794-796; 455 NW2d 409 (1990); *Craig ex rel Craig v Oakwood Hosp*, 471 Mich 67, 93-99; 684 NW2d 296 (2004). It appears that Dr. Kneiser wishes to "have it both ways," at least to some extent. Nevertheless, as a practical matter, any fact known to Ability Assessments is necessarily known to Dr. Kneiser, and vice versa. Furthermore, the exception for malpractice does slightly blur the distinction between Dr. Kneiser and her professional corporation. Ultimately, we need not resolve this question.

In *Spine Specialists*, this Court noted that MCR 2.302(B)(4) applies only to facts known or opinions held by an expert that were "*acquired or developed in anticipation of litigation*"—not to any and all information possessed by an expert. *Spine Specialists of Mich, PC*, 317 Mich App at 501-502 (emphasis in original). This Court has similarly held that, to the extent an expert witness acquired information as a factual witness "or as a result or consequence of his or her normal business activities and duties," the expert is "treated just as if they were any other potential witness, and the scope of discovery as to them is limited only by the provisions of [MCR] 2.302(B)(1)." *Linebaugh v Sheraton Mich Corp*, 198 Mich App 335, 345; 497 NW2d 585 (1993) (quotation and emphases omitted). This Court in *Spine Specialists* concluded that a doctor who acquired facts about his patient while treating him could not be said to have acquired those facts in anticipation of litigation under MCR 2.302(B)(4). *Spine Specialists of Mich, PC*, 317 Mich App at 502.

Nonparty-appellants and Citizens cite several unpublished opinions from this Court. Unpublished opinions are not binding, although they may be persuasive. *Eddington v Torrez*, 311 Mich App 198, 203; 874 NW2d 394 (2015). Nonparty-appellants argue that in *Smith v Goenka*, unpublished per curiam opinion of the Court of Appeals, issued January 7, 2021 (Docket No. 347127); pp 3-5, this Court held in that case that MCR 2.302(B)(4) applies when a party seeks an expert witnesses' financial information. Although *Smith* did involve a party that requested financial information from an expert witness, no party contended MCR 2.302(B)(4) was inapplicable, as plaintiff does here. *Id*. at 3-5. Therefore, the applicability of MCR 2.302(B)(4) was not at issue in *Smith*, and *Smith* has no persuasive value in this matter.

Citizens cites two additional unpublished cases, but Citizens presents no argument in support of those cases' potential applicability. We therefore decline to consider those cases. *Mitcham v City of Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). Citizens also points out, correctly, that discovery should not be abused as a weapon of gamesmanship. *Rock v Crocker*, 499 Mich 247, 267 n 15; 884 NW2d 227 (2016). We would wholeheartedly agree with that proposition even if we were not bound to do so, which is why, as we discuss below, the trial court has a duty to consider the propriety of the scope of a subpoena and balance the various parties' competing interests. However, to the extent Citizens argues that certain information should not be discoverable based on considerations beyond the facts of this case, Citizens presents a policy argument that is the exclusive province of the Legislature or our Supreme Court.

Therefore, by its plain language, MCR 2.302(B)(4) does not apply here. Plaintiff requested nonparty-appellants to produce records from 2017 through 2020, showing Dr. Kneiser's earnings for performing medicolegal work and showing the number of patient examinations Dr. Kneiser

performed. In other words, plaintiff sought records kept in the ordinary course of business. Plaintiff did not seek facts or opinions acquired or developed in anticipation of litigation or trial. Accordingly, regardless of the trial court's reasoning, the trial court reached the correct result here: MCR 2.302(B)(4) was inapplicable to plaintiff's request.

## IV. SCOPE OF SUBPOENA

Nonparty-appellants also argue that the trial court still abused its discretion by declining to quash plaintiff's subpoena because plaintiff's subpoena was unreasonable and oppressive under MCR 2.305(A)(4)(a), and because her request was beyond the scope of discovery under MCR 2.302(B)(1). We agree in part.

"Michigan follows an open, broad discovery policy that permits liberal discovery." *Reed Dairy Farm v Consumers Power Co*, 227 Mich App 614, 616; 576 NW2d 709 (1998). "However, Michigan's commitment to open and far-reaching discovery does not encompass fishing expeditions." *Augustine v Allstate Ins Co*, 292 Mich App 408, 419-420; 807 NW2d 77 (2011) (quotation marks, alteration, and citation omitted). MCR 2.302(B)(1) addresses the general scope of discovery:

> (1) In General. Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claims or defenses and proportional to the needs of the case, taking into account all pertinent factors, including whether the burden or expense of the proposed discovery outweighs its likely benefit, the complexity of the case, the importance of the issues at stake in the action, the amount in controversy, and the parties' resources and access to relevant information. Information within the scope of discovery need not be admissible in evidence to be discoverable.

"[A] trial court should protect parties from excessive, abusive, or irrelevant discovery requests." *Thomas M Cooley Law Sch v Doe 1*, 300 Mich App 245, 260-261; 833 NW2d 331 (2013) (citation omitted).

MCR 2.305(A)(1) allows a party to subpoena a nonparty to produce documents in the nonparty's possession. MCR 2.305(A) states, in relevant part:

> (1) A represented party may issue a subpoena to a non-party for a deposition, production or inspection of documents, inspection of tangible things, or entry to land upon court order or after all parties have had a reasonable opportunity to obtain an attorney, as determined under MCR 2.306(A). An unrepresented party may move the court for issuance of non-party discovery subpoenas.

> * * *

> (4) A subpoena issued under this rule is subject to the provisions of MCR 2.302(C), and the court in which the action is pending or in which the subpoena is served, on timely motion made by a party or the subpoenaed non-party before the time specified in the subpoena for compliance, may:

(a) quash or modify the subpoena if it is unreasonable or oppressive;

(b) enter an order permitted by MCR 2.302(C); or

(c) conditionally deny the motion on prepayment by the party on whose behalf the subpoena is issued of the reasonable cost of producing documents or other tangible things.  [MCR 2.305(A)(1), (4)].

Nonparty-appellants argue that the information sought by plaintiff is, at the most, only marginally relevant.  Therefore, they contend that the trial court should have concluded the expense of having nonparty-appellants produce these records outweighs the likely benefit.  For mostly the same reasons, nonparty-appellants argue plaintiff's subpoena was unreasonable and oppressive under MCR 2.305(A)(4)(a), and therefore the trial court should have quashed the subpoena.

We disagree with nonparty-appellants regarding relevance.  Although the records were unrelated to the substantive legal issues in this case, they were related to Dr. Kneiser's credibility, and information that bears on witness credibility or bias is never irrelevant. *Lewis v LeGrow*, 258 Mich App 175, 211; 670 NW2d 675 (2003).  To show an expert witness is potentially biased, one may show that an expert has a pattern of testifying for a particular category of defendants, see *Wilson v Stilwell*, 411 Mich 587, 599-600; 309 NW2d 898 (1981), or one may show that an expert has a pecuniary interest in the outcome.  *US Fire Ins Co v Citizens Ins Co of America*, 156 Mich App 588, 592; 402 NW2d 11 (1986).  Whether nonparty-appellants have a history of serving as experts for insurance companies, and their compensation for doing so, bears on Dr. Kneiser's credibility, and it is therefore relevant.[4]

Nonparty-appellants alternatively argue that even if MCR 2.302(B)(4) is inapplicable, the trial court erred by failing to quash the subpoena as being "unreasonable or oppressive" under MCR 2.305(A)(4)(a).  MCR 2.305(A)(4)(a) uses the word "may."  Although the word "may" can impose a mandate, it usually connotes a grant of discretion.  See *People v Arnold*, 502 Mich 438, 466-467; 918 NW2d 164 (2018).  In contrast, the plain language of MCR 2.302(B)(1) clearly obligates the trial court to balance the burden of the proposed discovery against the value of the proposed discovery.  The trial court dispensed with this obligation by merely stating that Citizens had "not argued how compliance with the subpoenas would cause any hardship to the Doctors."  We decline to make a determination of whether the subpoena should be quashed.  However, we conclude that the trial court's analysis was inadequate.

---

[4] Plaintiff also argues that the requested records are relevant to establishing whether Dr. Kneiser was *qualified* to conduct a mental or physical examination under MCL 500.3151.  In relevant part, MCL 500.3151(2)(b) imposes certain requirements upon examining physicians for "*the year immediately preceding the examination*" (emphasis added).  Even if plaintiff's request were relevant whether Dr. Kneiser met the requirements under this statute, only one year of records would be relevant.  In other words, records from 2017, 2018, and most of 2019 would be irrelevant.

In fact, Citizens did argue that compliance with the subpoena would be time-consuming and expensive, and doing so would constitute an unfair invasion of Dr. Kneiser's privacy.[5] Citizens also implicitly argued that to the extent plaintiff sought discoverable information, there were less intrusive means of obtaining that information. See generally *Alberto v Toyota Motor Corp*, 289 Mich App 328, 336-339; 796 NW2d 490 (2010); *Hamed v Wayne Co*, 271 Mich App 106, 109-111; 719 NW2d 612 (2006); *Fitzpatrick v Sec of State*, 176 Mich App 615, 617-618; 440 NW2d 45 (1989). The trial court's failure to explicitly balance these considerations as required by MCR 2.302(B)(1) hampers our review. See *Ronnisch Constr Group, Inc*, 499 Mich at 552.

Because the decision whether to quash a subpoena is discretionary, we will not make that decision on behalf of the trial court. However, for remand, we note that Citizens attached to its motion for reconsideration an affidavit from Dr. Kneiser that appears to have provided at least some of the information plaintiff sought.[6] On remand, the trial court shall proceed to balance the value of plaintiff's proposed discovery, particularly in light of the disclosures already provided in Dr. Kneiser's affidavit, against the burden of the discovery, including addressing nonparty-

---

[5] Individuals have a privacy interest in their personal tax returns. See *Fassihi v St Mary Hosp of Livonia*, 121 Mich App 11, 15-16; 328 NW2d 132 (1982). However, we find persuasive the Sixth Circuit's observation that corporate financial records give rise to somewhat lessened (albeit not nonexistent) privacy concerns. *Doe v United States*, 253 F3d 256, 269 (CA 6, 2001). Federal caselaw is not binding, but we may consider it persuasive. *Sharp v City of Lansing*, 464 Mich 792, 802-803; 629 NW2d 873 (2001). As discussed, Dr. Kneiser chose to avail herself of the corporate form, and the subpoena was addressed to her professional corporation. Conversely, MCL 600.2169(5)(a) is plainly inapplicable because this is not a medical malpractice claim, and plaintiff is not seeking nonparty-appellants' tax returns to show that Dr. Kneiser is unqualified.

[6] Additionally, in its late-filed brief, Citizens contends that Dr. Kneiser and Ability Assessments have withdrawn their services and that this case is now moot. That contention is not a fact of record. Nevertheless, it is well established that the courts may review a technically-moot issue if the issue is of public significance and the underlying conduct is likely to recur yet evade judicial review. See, e.g., *City of Detroit v Ambassador Bridge Co*, 481 Mich 29, 50-51; 748 NW2d 221 (2008). Citizens contends that insurance companies will never be able to retain their own hired doctors if those doctors may be subjected to discovery intended to show that those doctors are biased. The ability of insurance companies to conduct their own medical examinations is certainly one of public significance. Furthermore, if all doctors choose to withdraw their services when served with a discovery request, the propriety of those discovery requests may never come to appellate review. Citizens's own arguments demonstrate a high likelihood that, unless we consider this case now, a similar situation will recur, yet evade appellate review. We therefore choose to review this matter.

appellants' privacy concerns and the practically available alternative means for plaintiff to discover the information.

Vacated and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Amy Ronayne Krause
/s/ Stephen L. Borrello